IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROGELIO CARLOS III, MYRNA CARLOS, | § § § § § | |
| *Plaintiffs*, | § § | 5-16-CV-00251-FB-RBF |
| vs. | § § | |
| CARLOS CHAVEZ, VIRGILIO GONZALEZ, JAMES YBARRA, MARK DELGADO, CITY OF SAN ANTONIO, SAN ANTONIO POLICE DEPARTMENT, DETECTIVE JOHN DOE, NATIONAL NEUROMONITORING SERVICES, LLC, NEURODIAGNOSTICS AND NEUROMONITORING INST., INC., SOUTH TEXAS NEUROMONITORING, WILLIAM VANNESS, MARIBEL GOMEZ, | § § § § § § § § § § § § § § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Rule 12(b)(1) Motions to Dismiss filed by Defendants National Neuromonitoring Services, LLC, Neurodiagnostics and Neuromonitoring Institute, Inc., South Texas Neuromonitoring, Maribel Gomez, and William VanNess (collectively, "Neuromonitoring Defendants"). *See* Dkt. Nos. 73 & 75. All dispositive pretrial matters in this § 1983 case have been referred to the undersigned for disposition by report and recommendation pursuant to Western District of Texas Local Rule CV-72 and Appendix C. *See* Dkt. No. 82. Because there is supplemental federal court jurisdiction over Plaintiffs' state-law claims against the Neuromonitoring Defendants, the undersigned recommends that the Rule 12(b)(1) Motions to Dismiss, Dkt. Nos. 73 & 75, be **DENIED**.

1

## I. Factual and Procedural Background

Plaintiff Rogelio Carlos, III is paralyzed. He attributes his paraplegia to complications from neck injuries sustained when members of the San Antonio Police Department, it is alleged, beat him during the course of his May 20, 2014 arrest. Dkt. No. 60 (3d Am. Compl.). Mr. Carlos's paraplegia, however, did not arise until over a year and a half after the alleged beating, and not until after he underwent surgery to address the neck injuries alleged to have resulted from the beating.[1]

The Third Amended Complaint describes how, at first, Mr. Carlos's post-arrest injuries manifested as numbness in his hands and generalized tenderness throughout his neck. 3d Am. Compl. ¶ 80. It also explains that medical providers first treated his neck with steroid injections. *Id.* But his symptoms persisted and worsened, and he consulted an orthopedic surgeon who diagnosed him with cervical disc herniations at multiple levels pressing on his spinal cord. The surgeon recommended cervical surgery. *Id.* ¶¶ 80-81. Mr. Carlos received the recommended surgery on November 3, 2015, almost a year and a half after the alleged assault. It was only after this surgery that Mr. Carlos became paralyzed.

Defendants National Neuromonitoring Services, LLC, Neurodiagnostics and Neuromonitoring Institute, Inc., and South Texas Neuromonitoring are alleged to have supplied the neuromonitoring services for Mr. Carlos's surgery. *Id.* ¶ 85. Maribel Gomez is alleged to have served as the technician, and Dr. William VanNess as the neurologist. *Id.* Mr. Carlos and his co-plaintiff wife, Myrna, allege that the Neuromonitoring Defendants failed to timely assess, monitor, and identify significant changes to his neurological activity, and that they also failed to

---

[1] Although the Third Amended Complaint does not specify the exact nature of the injuries sustained by Mr. Carlos following his surgery, the combined response to the two Rule 12(b)(1) motions to dismiss clarifies that Mr. Carlos and his wife allege the Neuromonitoring Defendants' actions or omissions caused his paraplegia. *See* Dkt. No. 76 (Resp.).

timely communicate those changes to the surgeon, Dr. Bruggeman. *Id.* ¶¶84-91. According to the Carloses, these acts and omissions, along with the actions or omissions of the officers and city, are the direct and proximate cause of Mr. Carlos's paraplegia. *Id.* ¶ 92.

In March of 2016, the Carloses filed their original complaint asserting § 1983 excessive-force and wrongful-arrest claims against the City of San Antonio and San Antonio police officers Virgilio Gonzalez, Carlos Chavez, James Ybarra, Mark Delgado, and Detective John Doe, in their individual capacities (the officers and the City are collectively referred to herein as the "City Defendants"). *See* Dkt. No. 1. Then, more than a year later, the Carloses sought leave to join the Neuromonitoring Defendants. *See* Dkt. No. 58. According to their motion to amend, records produced in May 2017 allegedly revealed that Mr. Carlos's paralysis was not merely a known and unfortunate complication of his cervical surgery, as the Carloses originally believed, but instead was at least partially caused by the alleged negligence of the Neuromonitoring Defendants. *Id.*

On August 10, 2017, the District Court granted the Carloses leave to join the Neuromonitoring Defendants. *See* Dkt. No. 59. Shortly thereafter, the Neuromonitoring Defendants filed the two Rule 12(b)(1) Motions to Dismiss presently at issue, asserting in each that a lack of subject-matter jurisdiction with respect to the Carloses' state-law claims against them requires dismissal of those claims. *See* Dkt. Nos. 73 & 75.

With the Neuromonitoring Defendants now parties to the litigation, the City Defendants soon moved for leave to file cross-claims seeking contribution against them. *See* Dkt. Nos. 84 & 97. The City Defendants also sought leave to designate the Neuromonitoring Defendants and Dr. Adam Bruggeman as Responsible Third Parties pursuant to § 33.004 of the Texas Civil Practice and Remedies Code. *See* Dkt. Nos. 85 & 96.

## II. Analysis

The Rule 12(b)(1) motions at issue challenge the subject-matter jurisdiction of the district court to entertain the Carloses' state-law negligence claims against the Neuromonitoring Defendants. Given that federal subject-matter jurisdiction in the case is based on the Carloses' federal § 1983 claims against the City Defendants, *see* 28 U.S.C. § 1331, and diversity of citizenship does not supply federal jurisdiction over the case, *see* 28 U.S.C. § 1332, there must be a basis for federal subject-matter jurisdiction over the state-law claims if they are to proceed in federal court. The doctrine of supplemental jurisdiction is therefore implicated.

At the heart of the Rule 12(b)(1) motions' arguments opposing the Court's exercise of supplemental jurisdiction lies the difference in time and factual circumstances between events giving rise to the state-law and federal claims. The state-law negligence claims against the Neuromonitoring Defendants stem from an event—Mr. Carlos's surgery—that occurred over a year and a half after the alleged beating by police precipitating the § 1983 claims against the City Defendants. But as discussed below, Mr. Carlos's injuries are sufficiently at the core of both the state-law negligence and federal civil-rights claims to permit the exercise of supplemental jurisdiction over the negligence claims. Moreover, no factors counseling judicial discretion to decline supplemental jurisdiction are present at this time. Accordingly, the undersigned recommends that the two motions to dismiss be denied.

*Supplemental Jurisdiction Over the Carloses' State-Law Claims.* The Carloses readily admit that their federal and state-law claims entail factual differences. They argue for the exercise of supplemental jurisdiction because the actions of the City Defendants and Neuromonitoring Defendants combined to *together produce a single harm*—Mr. Carlos's paralysis. This argument finds purchase in the statute and case law addressing supplemental jurisdiction, and it ultimately justifies the exercise of supplemental jurisdiction in this case.

4

A federal court that enjoys jurisdiction over federal claims may exercise supplemental jurisdiction over state-law claims, provided the two sets of claims are sufficiently related to form part of the same Article III case or controversy. Title 28 U.S.C. § 1367 accordingly provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Claims are considered part of the same case or controversy if they "derive from a common nucleus of operative fact." *Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165-66 (1997) (quotation marks omitted). The burden to demonstrate federal jurisdiction in this context falls on the party or parties asserting jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

To determine whether federal and state-law claims are sufficiently related, a court looks first to the "sufficiency of the allegations in the complaint." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The Court may also consider undisputed facts in the record, such as the fact of Mr. Carlos's paralysis here, and the Court may further resolve disputed facts in certain circumstances, although this is not necessary here. Other than Mr. Carlos's paralysis, the two Rule 12(b)(1) motions at issue do not invoke undisputed facts beyond the scope of the complaint or require the resolution of disputed jurisdictional facts, and so those considerations do not further complicate the analysis in this case. *Cf. Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008) (noting that courts may consider undisputed facts or resolve disputed fact issues when implicated by a Rule 12(b)(1) motion); *see also Paterson*, 644 F.2d at 523 (noting the distinction between a facial attack on jurisdiction and a factual attack, where the latter may call for the court to consider facts beyond those alleged in the complaint and resolve

disputes over them). Therefore, the Court must examine whether the allegations in the pleadings, which for present purposes are assumed to be true, as well as the Carloses' uncontroverted allegation that Mr. Carlos became paralyzed shortly after the November 3, 2015 surgery, describe federal and state-law claims sufficiently related to one another to support the Court's exercise of supplemental jurisdiction over the state-law claims. *Paterson*, 644 F.2d at 523; *see also Williamson v. Tucker*, 645 F.2d 404, 412-14 (5th Cir. 1981).

Here, the federal and state claims alleged are sufficiently related to support supplemental jurisdiction. Despite the conceded factual differences between the types of claims, all the claims ultimately relate to and arise from a common nucleus of operative fact that "on the face of the pleadings concern[s] the same core factual issue." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). That common core factual issue is Mr. Carlos's paralysis and its cause or causes. For this reason, the factual differences presented are insufficient to preclude the exercise of supplemental jurisdiction. Indeed, supplemental jurisdiction does not require that all of the facts applicable to the federal claim also apply to the state law claim. *Lucarino v. Con-Dive, LLC*, No. CIVA H-09-2548, 2010 WL 786546, at *2 (S.D. Tex. Mar. 5, 2010).

To put it another way, "the determination of whether it is appropriate to exercise supplemental jurisdiction demands a 'fact specific case-by-case inquiry,'" *Whatley v. Young Women's Christian Ass'n of Nw. Louisiana, Inc.*, No. CIV.A. 06-423, 2006 WL 1453043, at *3 (W.D. La. May 18, 2006), in which the state-law and federal claims' "relatedness in time, space, origin, or motivation" can be factored into the analysis along with whether, taken together, the claims "form a convenient unit for trial purposes." *Fed. Ins. Co. v. C.D. Henderson Inc.,* No. A-07-CA-982-SS, 2008 WL 11334958, at *3 (W.D. Tex. Oct. 31, 2008) (quotation marks omitted). Thus, although federal courts most often exercise supplemental jurisdiction over state-law claims arising from the same facts—or involving similar occurrences, witnesses, or evidence—as the

case's federal claims, *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996), the presence of factual differences among the claims by no means ends the analysis. Some courts have even recognized that "Section 1367(a) is generally satisfied by a 'loose factual connection' between the two claims." *Lucarino,* 2010 WL 786546, at *2 (quotation marks omitted).

The Fifth Circuit's opinion in *Feigler v. Tidex, Inc.*, 826 F.2d 1435 (5th Cir. 1987), demonstrates how state-law and federal claims separated in time and some factual circumstances may nonetheless be sufficiently related for purposes of supplemental jurisdiction. In *Feigler*, a seaman suffered a back injury from a slip-and-fall accident onboard an offshore rig. Several weeks later, while on route from the airport in New Orleans to his home, the car in which he was travelling was rear-ended. He later sued his employer under the Jones Act and general maritime law for personal injuries as well as maintenance and cure relating to his slip and fall. But he then joined as parties to that federal action the driver of the car that rear-ended him, along with the driver's insurance company, against whom he lodged state-law personal-injury claims stemming from the rear-end crash. *See id.*

On appeal, the Fifth Circuit affirmed the district court's exercise of supplemental jurisdiction over the seaman's state-law personal-injury claims against the driver and insurance company. The Court, while recognizing that the two accidents were "geographically distant," found that the overlap in injury rendered the claims "sufficiently intertwined" to warrant the exercise of supplemental jurisdiction over the state-law personal-injury claims.

> The extent of the injury resulting from the accident in New Orleans could not be determined without a concomitant decision about the extent of the injury from the fall on the rig, and vice-versa. This single-injury syndrome provides the common nucleus of operative fact sufficient to support pendent-party jurisdiction.

*Id.* at 1439; *see also* Charles Alan Wright, *et al.*, Grant of Supplemental Jurisdiction in 28 U.S.C.A. § 1367(a), 13D Fed. Prac. & Proc. Juris. § 3567.1 (3d ed. 2017).

7

As with *Feigler*, at the center of both the federal and state-law claims asserted by the Carloses lies the extent of the injury resulting from the alleged beating, which cannot be determined without a concomitant decision about the extent of the injury resulting from the surgery. Thus, Mr. Carlos's paralysis provides the common nucleus of operative fact sufficient to support the exercise of supplemental jurisdiction over the Carloses' state-law claims against the Neuromonitoring Defendants.

*Lack of Any Convincing Reason to Decline to Exercise Jurisdiction.* Section 1367(c) provides a district court with discretion to decline the exercise of supplemental jurisdiction over a state-law claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The exercise of supplemental jurisdiction is also guided by the "common law factors of judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

None of the statutory factors set forth in § 1367(c) are present in this case. The Carloses bring straightforward, not novel or complex, medical-malpractice claims against the Neuromonitoring Defendants. There is also no reason to believe at this juncture that the state-law claims predominate over the federal claims. Finally, none of the federal claims in this case have been dismissed.

The Neuromonitoring Defendants nevertheless argue that dismissal is appropriate in light of the amount of time this case was pending before they were joined, along with the amount of discovery that has already occurred. The Neuromonitoring Defendants also argue that, should the Court decline to dismiss the state-law claims, they will be "forced to expend time and resources

8

to participate in discovery matters not germane to their claims." These concerns can be addressed by extending the case's deadlines and permitting the Neuromonitoring Defendants to retake necessary depositions. To the extent the Neuromonitoring Defendants believe that certain discovery is not relevant to their claims or defenses, they are free to abstain from participating in that part of the discovery process.

Of course, should some or all of the Carloses' federal claims against the City Defendants later be dismissed, that could present a very different question. At this juncture, however, the federal claims provide a basis for the exercise of supplemental jurisdiction, and statutory and common-law considerations do not weigh against the Court's exercise of its supplemental jurisdiction over the Carloses' state-law claims against the Neuromonitoring Defendants.

### III. Conclusion

For these reasons, the undersigned recommends that the Rule 12(b)(1) Motions to Dismiss filed by Defendants National Neuromonitoring Services, LLC, Neurodiagnostics and Neuromonitoring Institute, Inc., South Texas Neuromonitoring, Maribel Gomez, and William VanNess, MD, Dkt. Nos. 73 & 75, be **DENIED**.

In light of this recommendation, **IT IS ORDERED THAT** the stay in discovery set forth in the Court's October 13, 2017 Order, Dkt. No. 83, is **LIFTED**.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed within fourteen (14) days after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file

the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc*., 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED.**

SIGNED this 3rd day of January, 2018.

**RICHARD B. FARRER**
**UNITED STATES MAGISTRATE JUDGE**