# EXHIBIT G

### STATEMENT OF JAMES A. FLAVIN

My name is James A. Flavin.  I am over the age of 18, of sound mind and have personal knowledge of the facts contained herein.

I am currently employed as an Assistant Chief of Police with the San Antonio Police Department. I have been an Assistant Chief since July of 2016.  There are two Assistant Chief positions in the SAPD and they are the second highest ranking positions in the department and are directly below the Chief of Police.  Prior to becoming an Assistant Chief, I was an acting Deputy Chief from March of 2016 until July of 2016.

I have been employed by the SAPD since becoming a police cadet in March of 1988.  Following my graduation from the SAPD Training Academy in September of 1988, I have held every rank in the SAPD except for the rank of Chief of Police.  When I held the rank of Captain, which was from June of 2007 to March of 2016, one of my assignments was the commander of the SAPD Training Academy.  My tenure as the Training Academy Commander was from January of 2011 until July of 2014.  Following my assignment at the Training Academy, I was the Commander of the SAPD Internal Affairs Unit.  I held this position from July of 2014 until September of 2015. Following my assignment as the Commander of the Internal Affairs Unit, I was Chief Executive Officer from August of 2015 until March of 2016.  I am a licensed peace officer in the State of Texas.

I have personal knowledge of the SAPD's Training Academy requirements for individuals to become police officers and the continued training that individuals receive once they graduate from the SAPD Training Academy, my personal knowledge of the TCOLE requirements, my personal knowledge obtained as the Commander of the Training Academy, my personal knowledge obtained as the Commander of the Internal Affairs Unit and my personal knowledge and experience that I have obtained as police officer working for the SAPD since my time as a cadet in the Training Academy.

The SAPD's training requirements exceed the requirements mandated by the State of Texas through the Texas Commission on Law Enforcement (TCOLE).  TCOLE is the Texas regulatory agency which certifies Texas peace officers and establishes the minimum requirements for competency and reliability which includes education, training, physical, mental and moral standards for licensing as an officer.

All individuals employed by the SAPD as peace officers are required to be certified by TCOLE. Any individual, except for someone applying for the Chief of Police position, who wants to become a police officer with the SAPD must go through a multi-step process prior to obtaining a slot in a cadet training class.  There are a limited number of slots available in any given training class.  Generally, the multi-step process to obtain a slot includes, but is not limited to, a written civil service examination, physical fitness test, psychological evaluation, a structural oral interview

and a background check. The screening standards set by the SAPD for anyone to be considered for a cadet position meets or exceeds those set by TCOLE.

Once an individual obtains a slot in a cadet class, he or she is required to complete and graduate from the cadet basic training course conducted by the SAPD Training Academy. All individuals who want to be police officers for the SAPD must complete and graduate from the cadet basic training course. The SAPD cadet basic training course consists of approximately 1350 hours of instruction. TCOLE requires that the Basic Peace Officer certification course consist of approximately 667 hours of instruction. The SAPD's cadet basic training course exceeds the hours mandated by TCOLE for a Basic Peace Officer certification by at least 600 hours. Currently, a cadet basic training course lasts anywhere from 32 weeks to 33 weeks. The number of weeks varies due to scheduled City of San Antonio holidays. The SAPD's cadet basic training course provides instruction in all of the subject areas required by TCOLE at or above the minimum time requirements. The SAPD cadet basic training course also expands a cadet's training to subject areas not required by TCOLE.

Once a cadet graduates from the SAPD Training Academy, he or she is a TCOLE licensed peace officer and holds the rank of patrol officer in the SAPD. Newly graduated patrol officers are on probationary status for a one year period. New graduates are commonly referred to as probationary officers. Upon graduation, probationary officers are assigned to a patrol shift where they are paired with Field Training Officers (FTOs). In this phase of their employment, probationary officers obtain hands-on field experience and perform the regular functions of a police officer. During the Field Training Program, the probationary officers are moved to different shifts and different areas of the City. The Field Training Program lasts 14 weeks. Once a probationary officer completes the Field Training Program, he or she is assigned to a permanent position in the department.

During the SAPD basic cadet training course, cadets are given instruction on the SAPD General Manual which is a voluminous compilation of the SAPD's policies and procedures. Cadets are also given instruction as to the SAPD's rules and regulations. Cadets are provided training and instruction regarding SAPD Procedure 501 which addresses "Use of Force", SAPD Procedure 502 which addresses "Warrantless Arrests, Searches and Seizures", SAPD Procedure 403 which addresses "Communications", SAPD Procedure 508 which address "Field Contacts" and SAPD Procedure 200 which contains the SAPD's Rules and Regulations. True and correct copies of SAPD Procedures 200, 403, 501, 502 and 508 that were in effect on May 20, 2014 are attached to this declaration and are incorporated as if fully set forth herein. I attest these are true and correct copies of SAPD Procedures 200, 403, 501, 502 and 508 by my signature below. Cadets are required to learn and understand these policies, as well as all others, while in the Training Academy and follow them once they become officers in the field.

After an officer graduates from the SAPD Training Academy, he or she is required to attend "in-service" training on an annual basis except for the year he or she graduates from the Training Academy. The annual "in-service" requirement is mandatory for all officers. All officers, regardless of rank, are required to attend 40 hours of "in-service" training annually. This

requirement exceeds the TCOLE training requirement which mandates that an officer have 40 hours of continuing training every two (2) years.  During "in-service" training, officers are provided information as to any changes in SAPD policies, procedures, rules or regulations and to changes in the law.  Additionally, officers can receive notice of changes to SAPD policies, procedures, rules or regulations or the law through the issuance of a General Order, which all officers are required to read, understand and follow.

The rank structure of the SAPD from lowest ranking officer to highest ranking officer is as follows: Patrol Officer, Detective-Investigator, Sergeant, Lieutenant, Captain, Deputy Chief, Assistant Chief and Chief of Police.  Supervisory officers are considered to be at the Sergeant rank and above.  When an individual obtains a promotion to the rank of Sergeant, he or she is required to attend a 40 hours of supervisor training at the SAPD Training Academy. During the supervisor training course, newly promoted supervisors are given instruction in areas that include, but are not limited to, responding to critical incidents, internal affairs procedures, interaction with the media and diversity issues.

The SAPD employs over 2200 officers.  The officers are responsible for providing police protection to over 1.4 million people within the City of San Antonio.  The SAPD has 6 different substations and multiple units and/or offices throughout the City to provide these services.  The geographical area covered by SAPD officers is approximately 465 square miles.

The SAPD does not condone, permit or authorize an officer to use excessive force.  Officers and cadets are specifically trained that excessive force not only violates federal law and the Texas Penal Code, but that it also violates departmental policy.  Officers are only allowed to use the level of force necessary to accomplish a lawful police objective.  Additionally, the SAPD does not condone, permit or authorize officers to make warrantless arrests unless they have enough personal knowledge or reliable information upon which an arrest warrant could be issued if time permitted.

All officers are subject to being administratively investigated for violations of the SAPD's rules, regulations, policies or procedures if a complaint regarding their conduct is received by the department.  The SAPD Disciplinary Procedures are contained in Procedure 303.  A true and correct copy of SAPD Procedure 303 that was in effect on May 20, 2014 is attached to this declaration and is incorporated as if fully set forth herein.  I attest this a true and correct copy of SAPD Procedure 303 by my signature below.  Complaints against officers can originate from persons outside the department, usually citizens, or sworn members of the SAPD.  The SAPD requires officers who know of either an administrative violation or a criminal violation by a fellow officer to report the violation to the appropriate authority. The SAPD's Internal Affairs Unit is the unit charged with investigating administrative complaints.  The Internal Affairs Unit has a staff of sergeants that conduct the administrative investigations.  Generally, these sergeants are responsible for obtaining a sworn complaint from the complainant if the complainant is a citizen, gathering as much relevant evidence as is possible and having the officer or officers under investigation provide a response to the charges by responding to a series of questions.  Once the investigative process is completed, the contents of the investigation are forwarded to the Complaint and Administrative

Review Board (CARB), which was formerly referred to as the Chief's Advisory Action Board. The CARB is comprised of sworn members of the SAPD as well as citizens from the community. The CARB reviews the information obtained during the investigation as well as the information provided during its meeting and makes a determination as to whether the case is sustained, unfounded, inconclusive or justified.   Depending on the finding, the CARB will make a disciplinary recommendation to the Chief of Police.   The CARB's recommendations are then forwarded to the Chief of Police who can consider the CARB's recommendations.   The CARB's recommendations are not binding on the Chief of Police and he or she has the authority to impose the disciplinary measures that he or she feels is appropriate which can range from no discipline being imposed to termination from employment.

If an officer is suspected of committing a violation of the law, the SAPD will undertake a criminal investigation through one of its own units or it may refer to the matter to another law enforcement agency depending on the circumstances.   If warranted by the facts of the case, the matter may be forwarded for prosecutorial review which could result in the matter being prosecuted.

The disciplinary process enacted by the SAPD enables the department to investigate non-criminal matters involving its officers who are accused of violating department policies, procedures, rules and regulations and allows the department the ability to enforce those same policies, procedures, rules and regulations.

JAMES A. FLAVIN

I declare under penalty of perjury that the foregoing is true and correct.   Executed on May 5, 2019                                    .



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Section 200 – Rules and Regulations*



| Office with Primary Responsibility: | COP | Effective Date:<br>Prior Revision Date: | February 15, 2012<br>**August 4, 2006** |
|---|---|---|---|
| Office(s) with Secondary Responsibilities: | COB, CSB | Number of Pages: | 15 |
| Forms Referenced in Procedure: | None | Related Procedures: | ALL |

## SECTION 1.00 INTRODUCTION

**1.01  *PURPOSE:***

The Rules and Regulations officially adopted and set forth in this manual are for the guidance, regulation, and control of the conduct of all members of the police department of the City of San Antonio, Texas. These rules are designed to promote efficiency, discipline, and good public relations by setting forth policies governing the conduct and demeanor of every member of the police department, both on and off-duty.

**1.02  *AUTHORITY:***

A.  CITY CHARTER: Pursuant to Article V of the Charter of the City of San Antonio, the director, chief of the police department, shall have supervision and control over the police department, subject to approval by the city manager.

B.  COLLECTIVE BARGAINING AGREEMENT: Pursuant to Article VII of the Collective Bargaining Agreement between the City of San Antonio and the San Antonio Police Officers' Association, the chief shall have the exclusive right to establish, rescind, or modify departmental rules and regulations while such contract is in effect, subject to review by the city manager. Changes will be made through departmental orders issued by the chief of police and reviewed by the Fire and Police Civil Service Commission and the city manager.

C.  LOCAL GOVERNMENT CODE: Pursuant to Chapter 143 of the Local Government Code, as amended, the chief of the San Antonio Police Department shall have the power to take disciplinary action or suspend indefinitely an officer under his supervision for violation of either Chapter 143 of the Local Government Code, the Civil Service Rules of the City of San Antonio, or of these rules and regulations. In addition, the chief of police shall be empowered to take disciplinary action or suspend indefinitely any other police employee for violation of these rules and regulations.

**1.03  *SCOPE:***

These rules and regulations govern the conduct, responsibilities, duties, assignments of, and the use of equipment by all members of the department. These rules and regulations may further cover such other matters as the chief of police may deem necessary or expedient for the proper conduct of the work of the department, and additionally incorporate departmental orders, directives, and procedures. These rules and regulations become effective on the date of issuance and rescind the Rules and Regulations of the San Antonio Police Department issued on September 25, 1984 and became effective on November 1, 1984.

**1.04  *ACKNOWLEDGMENT:***

A.  EFFECTIVE DATE: The Rules and Regulations of the San Antonio Police Department, which are incorporated in the General Manual, apply to all employees, both sworn and non-sworn, and have the effect of an order. These rules and regulations, as revised and adopted on January 30, 2012, became effective on February 15, 2012.




**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Section 200 – Rules and Regulations*

B.  RECEIPT OF ISSUANCE: All sworn and non-sworn members of this department will be issued a copy of the Rules and Regulations and are required to acknowledge its receipt. A signed receipt acknowledging acceptance of the rules and regulations shall be deemed sufficient notice of the existence and effect of the Rules and Regulations of the San Antonio Police Department. Any recommendations for revision should be directed to the Office of the Chief of Police.

**1.05  SUPERVISORY ACKNOWLEDGMENT:**

Each supervisory officer is required to acknowledge his personal responsibility for enforcing the provisions of these rules and regulations, departmental orders, and procedures of this department.

**1.06  DEFINITIONS OF TERMS:**

A.  "ASSIGNMENT" means the job tasks of a member, which may include a specific beat, post, or geographical responsibility.

B.  "CHAIN OF COMMAND" means the unbroken line of authority extending from the chief of police through a single subordinate at each level of command down to the level of execution.

C.  "DEPARTMENT" refers to the San Antonio Police Department, the members of the organization, and the physical assets of the entity.

D.  "DEPARTMENTAL ORDERS" means orders issued for the purpose of instruction, clarification of policy, and establishment of procedure or rules in the form of departmental orders, special orders, chief's memorandum, personnel orders, training bulletins, and division orders.

E.  "DIRECTIVES" may be used synonymously with departmental orders.

F.  "GENDER" use of the masculine gender shall also include, where applicable, the female gender.

G.  "IMMEDIATELY" means as soon as possible and feasible.

H.  "INTOXICANT" means any alcoholic beverage or controlled substance, which, when introduced into the body, may cause an impairment of any mental or physical capacity.

I.  "INTOXICATION" means any level of mental or physical incapacitation resulting from the voluntary introduction of any alcoholic beverage or controlled substance into the body.

J.  "MAY" means the action is permissive.

K.  "MEMBERS" mean all employees of the San Antonio Police Department.

L.  "MUST" means the action is mandatory.

M.  "PROCEDURES" means a comprehensive, instructional, written communication providing direction in the accomplishment of a police related task.

N.  "SHALL" means the action is mandatory.

O.  "SHOULD" means the action is advisory. Where used, "should" indicates the procedure is not mandatory. However, it should be followed if the situation permits.

P.  "SUBORDINATE" means any member who is subject to the authority of another.

 **SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Section 200 – Rules and Regulations* 

Q. "SUPERVISORY OFFICERS" mean sworn personnel of this department who have attained the rank of sergeant or above.

R. "TOUR OF DUTY" means that period of time beginning when the member reports for duty and ending when he is relieved from duty by either the dispatcher or a supervisory officer.

S. "WILL" means the action is mandatory.

**1.07   *THE MEANING AND INTENT OF OTHER WORDS OR PHRASES:***

Words or phrases not specifically defined in these rules and regulations shall be interpreted to have the meaning and intent established in the common usage.

## SECTION 2.00 ADMINISTRATION

**2.01   *COMMAND/SUPERVISORY RESPONSIBILITIES:***

A. MAINTAIN BOOKS AND RECORDS: Supervisory officers shall maintain all books, records, and reports under the supervisory officer's authority in conformity with the rules, regulations, and procedures of the department.

B. ENFORCE RULES: Supervisory officers shall be uniform and impartial in the enforcement of these rules and procedures; the insurance of conformity on the part of command officers to all orders, directives, and other instructions issued to the members of the department.

C. KEEP INFORMED OF ACTIVITY UNDER COMMAND: Supervisory officers shall keep informed of all activity which affects their responsibility within the supervision; frequently testing the knowledge of subordinates as to conditions in their beats and posts or as to functions of their assignments.

D. DOCUMENT BRIEFINGS AND INSPECTIONS: Supervisory officers shall document all inspections and briefings of personnel.

E. COORDINATE ACTIVITIES WITH OTHER UNITS: Command officers shall keep advised of the operations of other divisions of the department, and coordinates the activities of their command with other divisions and sections of the department.

F. HAVE UPDATED EMPLOYEE LOCATOR LIST: Supervisory officers shall have at their residence the current Employee Locator List, properly corrected to date. Supervisory officers receiving locator lists must frequently review them and check all changes with the personnel involved.

**2.02   *CHAIN OF COMMAND:***

All officers shall familiarize themselves with the command structure of the department and shall operate within it.

**2.03   *DIRECTIVE SYSTEM:***

All departmental personnel shall familiarize themselves with the formal means of communications within the department.



**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Section 200 – Rules and Regulations*



## SECTION 3.00 INDIVIDUAL RESPONSIBILITIES

**3.01  *ABIDE BY LAWS AND DEPARTMENTAL ORDERS:***

  A.  LAWS: Members shall abide by the laws of the United States and the State of Texas, and ordinances of the City of San Antonio.

  B.  ORDERS, RULES, REGULATIONS, AND PROCEDURES: Members shall abide by the departmental orders, rules, regulations, and procedures of the San Antonio Police Department.

**3.02  *TRUTHFULNESS OF MEMBERS:***

  Members shall speak the truth at all times. Reports and written communications from any member shall also reflect the truth.

**3.03  *OBEY LAWFUL ORDERS:***

  Members shall obey all lawful orders and directions given by supervisory officers and shall comply with instructions given by the police dispatcher. Such obedience shall be prompt and willing.

  A.  INSUBORDINATION: Defying the authority of any supervisory officer by obvious disrespect, disputing his orders, or failure or deliberate refusal to obey any lawful order given by him shall be deemed insubordination.

  B.  MANNER OF ISSUING ORDERS: Orders from a supervisor to a subordinate shall be in clear, understandable language, civil in tone, and issued in pursuit of departmental business.

  C.  UNLAWFUL ORDERS PROHIBITED: No commanding or supervisory officer shall knowingly or willfully issue any order which is a violation of any law, ordinance, or departmental rule.

  D.  CRITICISM OF LAWFUL ORDERS: Members shall not publicly criticize or comment derogatorily to anyone about instructions or orders they have received from a supervisory officer.

  E.  CONFLICT OF ORDERS: Should any subordinate receive an order which conflicts with a previous order from another supervisory officer or with any general order, he shall respectfully call attention to the conflict. If the supervisory officer giving the conflicting order does not change the same so as to eliminate the conflict, his order shall stand and the responsibility shall rest with the supervisor.

  F.  OBEDIENCE TO UNLAWFUL ORDERS NOT REQUIRED: No member is required to obey an order which is contrary to the laws of the United States, statutes of the State of Texas, or ordinances of the City of San Antonio.

  G.  OBEDIENCE TO UNJUST OR IMPROPER ORDERS: Members who are given orders they feel are unjust or contrary to departmental orders or the Rules and Regulations of the Department must first obey the order to the best of their ability and may then proceed to appeal as provided herein.

  H.  REPORTING UNLAWFUL ORDERS: Any member who is given any unlawful, unjust, or improper order shall at the first opportunity report in writing to the chief of police, through the chain of command, the facts of the incident together with his own action.

  I.  APPEALS FROM UNLAWFUL OR UNJUST ORDERS: Members shall appeal for relief from orders or instructions which are unlawful or unjust. Such appeals must be made in writing to higher authority through the chain of command.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Section 200 – Rules and Regulations*



**3.04   *RESPONSIBILITY TO SERVE THE PUBLIC:***

Members shall serve the public through direction, counseling, assistance, and protection of life and property. Members shall also respect the rights of individuals and perform their services with honesty, sincerity, courage, and sound judgment.

A.   IMPARTIAL ATTITUDE: Members, while being vigorous and unrelenting in the enforcement of the law, must maintain an impartial attitude toward complainants and violators. Members shall at all times consider it their responsibility to be of service to anyone who may be in danger or distress, regardless of race, color, creed, sex, or national origin.

B.   COURTESY: Members shall at all times be courteous, kind, patient, and respectful in dealing with the public, and shall strive to merit the esteem of all law abiding citizens by an impartial discharge of their official duties.

C.   CONDUCT AND BEHAVIOR: Members, on-duty or off-duty, shall be governed by the ordinary and reasonable rules of good conduct and behavior, and shall not commit any act tending to bring reproach or discredit on themselves or the department.

D.   DUTY TO IDENTIFY: All members of the department, when called upon to do so by any person, shall, in a courteous manner, give their name and/or badge number.

E.   POLICE ACTION WHEN NOT IN UNIFORM: An officer not in uniform, when exerting police authority, shall identify himself as a police officer and state the purpose or reason for his actions.

F.   NEUTRALITY IN CIVIL ACTIONS: Members shall not give aid or assistance in civil cases, except to prevent a breach of the peace or halt a disturbance.

G.   MAINTENANCE OF COMPETENCY: Members shall maintain sufficient competency to properly perform their duties and assume the responsibilities of their positions.

**3.05   *PHYSICAL HYGIENE AND PSYCHOLOGICAL WELL-BEING:***

Members shall maintain themselves in good physical and mental condition.

A.   GOOD PHYSICAL HYGIENE: All members, by frequent bathing, shall exercise good bodily hygiene and cleanliness.

B.   MAINTENANCE OF PHYSICAL STANDARDS: All members, by regular exercise and moderate living, shall maintain themselves in such a physical condition as to be able to handle strenuous physical contacts or demands required of the active, uniformed law enforcement officer.

C.   CHEMICAL DEPENDENCE: No member shall become physically or mentally dependent upon alcohol or any controlled substance unless administered by a licensed physician. Dependence upon a prescribed drug is not an excuse for being unable to perform.

D.   CONTROLLED SUBSTANCES: Members shall neither possess, use, nor distribute any substances regulated by the Controlled Substances Act, except possession related to official police duties. Use or possession of a controlled substance under this section is no violation if such use or possession is under the direction of a licensed physician.

E.   EMOTIONAL AND PHYSICAL WELL-BEING: Members may be required to seek medical or psychological services upon the order of the chief of police.

 

## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Section 200 – Rules and Regulations*

**3.06** *RELATIONSHIPS WITH CO-WORKERS:*

Members shall conduct themselves in such a manner so as to bring about the greatest harmony and cooperation among the various units of the department.

A. MUTUAL RESPECT: Members shall treat other members of the department with respect, affording them the response due to them as co-workers.

B. COURTESY: Members shall be courteous, civil, and respectful to their supervisory officers and associates, and shall not use threatening or insulting language, whether on or off-duty.

C. RESPECT TO SUPERVISORY OFFICERS: Members shall exhibit respect for supervisory officers at all times.

D. SUPPORTING FELLOW MEMBERS: Members shall cooperate, support, and assist each other at every opportunity, and shall not publicly criticize the work or the manner of performance of duty of any other member.

E. SUPPORT IN TIME OF DANGER: Members shall act together and protect one another in time of danger or under circumstances where danger might reasonably be impending.

F. WORKING RELATIONSHIPS: Members shall abstain from performing any acts or making any statements, oral or written, which are directed at their co-workers with the intent to destroy the morale, good order, and working relationships with such co-workers.

**3.07** *CRITICISM OF THE DEPARTMENT:*

Members of the department shall not criticize or ridicule the department, its policies, administrators, or public officials through speech, writings, or other forms of expression:

A. DEFAMATORY: Members shall not use speech, writings, or other forms of expression that are defamatory, obscene, or unlawful.

B. UNDERMINES EFFECTIVENESS OF DEPARTMENT: Members shall not use speech, writings, or others forms of expression that tend to interfere with or undermine the effectiveness of the department to provide public services.

C. INTERFERES WITH DISCIPLINE: Members shall not use speech, writings, or other forms of expression that tend to interfere with the maintenance of proper discipline.

D. AFFECTS PUBLIC CONFIDENCE: Members shall not use speech, writings, or other forms of expression that tend to adversely affect the public's confidence in the integrity of the department and/or its officers and employees.

E. DAMAGES REPUTATION OF DEPARTMENT: Members shall not use speech, writings, or other forms of expression that damage or impair the reputation or efficiency of the department.

F. DISREGARDS THE TRUTH: Members shall not use speech, writings, or other forms of expression that are made with reckless disregard for the truth.

**3.08** *UNAUTHORIZED RELEASE OF INFORMATION:*

A. PROGRESS OF INVESTIGATION: No member of the department shall make known any information concerning the progress of an investigation or proposed action against a known or reported law violation or condition, or any proposed police action of any type, to persons not authorized to receive it.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Section 200 – Rules and Regulations*



B. RELEASE OF PUBLIC STATEMENT: Members shall not present themselves as representing the department in any matter unless delegated or authorized to do so by a supervisory officer.

C. PUBLIC ADDRESS OR WRITING FOR PUBLICATION: No member of the department shall make a public address or write for publication concerning the affairs of the department without the consent of the chief of police.

D. STATEMENTS OF POLICY, ORGANIZATION, AND DISCIPLINARY ACTION: Statements of policy, information regarding changes in organization, or disciplinary action will be made from the Office of the Chief of Police, and no member of the department, unless specifically authorized, will discuss such matters with others.

E. RELATIONSHIP WITH ATTORNEY, BONDSMAN, OR AGENT: It is forbidden to give information about any prisoner in confinement to any attorney, bondsman, the agent of either, or any other person not authorized to receive it.

F. RECOMMENDATION OF ATTORNEY OR AGENT: No member shall recommend to any person the employment of a particular attorney, counselor, or bondsman. No member shall suggest the name or names of any attorney or other person to a prisoner.

**3.09   *INFORMATION ON BULLETIN*:**

Members are responsible for reading the department's Daily Bulletin prior to beginning their tour of duty. Departmental personnel returning to duty after any absence shall read all directives published during their absence, prior to returning to duty.

**3.10   *CURRENT ADDRESS AND TELEPHONE*:**

All members shall report to their immediate supervisor and to the Accounting and Personnel Unit, on any change of address and/or telephone number within two working days. Members shall have a working telephone available to them. Members may rely on a cellular phone as a means of being contacted for departmental, standby and/or call back purposes.

**3.11   *USE OF INTOXICANTS*:**

A. DRINKING ON DUTY: Members shall not drink intoxicating beverages while on-duty. No member shall report for duty exhibiting the odor of intoxicants, or any of the elements or appearance of intoxication. The exception shall be for a member to accomplish a specific police assignment or mission, when approved by a supervisor.

B. INTOXICATION: Members shall not at any time be intoxicated while on-duty. Members shall not be intoxicated while in public view. No member, while off-duty, shall drink intoxicating beverages to an extent which renders him unfit to report for duty.

C. ALCOHOLIC BEVERAGES ON OFFICIAL PREMISES: Intoxicants in any form will not be brought into any police facility, including city vehicles, except when approved by a supervisor.

D. CONSUMPTION OF ALCOHOLIC BEVERAGES IN UNIFORM: No officer shall drink intoxicants in uniform.

**3.12   *USE OF TOBACCO*:**

Members shall refrain from the use of tobacco in any form while in direct contact with the public.




# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Section 200 – Rules and Regulations*

**3.13   *VEHICLE OPERATOR'S LICENSE:***

Every officer is responsible for having in his possession a valid vehicle operator's license.

**3.14   *FINANCIAL OBLIGATION:***

No member in a supervisory position shall place himself under financial obligation to a subordinate, nor shall a supervisor solicit a subordinate as a co-maker or endorser of any note or obligation.

**3.15   *GRATUITIES, LOANS, AND SOLICITATIONS:***

A.   ACCEPTING GIFTS: Members shall not receive from prisoners, persons recently released from custody, persons suspected of criminal activity, nor their representatives, either directly or indirectly, any tangible or intangible property, whether it is a gift or the result of a purchase or trade.

B.   BORROWING: Members shall not borrow anything of value from any person or persons known or suspected to be engaged in criminal activity.

C.   SOLICITATIONS: Members will not solicit funds for the benefit of any member, the department, or any other public or private agency without the written authority of the chief of police.

**3.16   *ACCEPTING REWARDS:***

Members of the department shall not accept any reward of money, or fee, or compensation of any type for any service rendered in the performance of duty other than the salary or stipends given by the city or other branch of government.

**3.17   *OUTSIDE EMPLOYMENT:***

A.   PERMISSION REQUIRED:  Members of the department shall not engage in any outside employment, nor own, operate, or have any financial interest in any business activity without the written permission of the chief of police.

B.   OBEY LAWS: Officers engaged in performing police duties in outside employment, whether in uniform or civilian clothes, must enforce all laws as though on-duty for the San Antonio Police Department.

C.   SUBJECT TO RULES AND REGULATIONS: Officers engaged in outside employment shall conduct themselves as though they were on-duty and shall be subject to these rules and regulations.

**3.18   *CITY EQUIPMENT/PROPERTY:***

A.   IMPROPER OR NEGLIGENT HANDLING: Improper or negligent handling of any city property or willful damage to city property is prohibited.

B.   LOSS THROUGH NEGLIGENCE: Officers losing their badges, firearms, or other city equipment through negligence or carelessness may be obligated to pay for the replacement cost or an amount determined by the degree of negligence on the part of the officer. Loss or damage to city property occurring while the member is acting properly in the line of duty, or in a burglary of his home, is not classified as negligence. Members should not leave removable city issued equipment in plain view in any vehicle. An officer may be found negligent if he or she leaves city issued equipment in any vehicle (city or privately owned) and the property is stolen, as a result of a burglary of that vehicle.

C.   SAFE OPERATION OF VEHICLES: City vehicles will be operated in a safe manner and in compliance with all traffic laws.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### Section 200 – Rules and Regulations



D. INVENTORIED CITY PROPERTY: Inventoried city property, which includes city vehicles, shall not be used by any member of the department without the knowledge and permission of the person responsible for said equipment or vehicle.

E. WASTE OR CONVERSION: Members shall not willfully waste or convert to their own use any city owned supplies, equipment, or services.

F. REPORTING MALFUNCTION: Members shall immediately report any malfunction or need of repairs of any city property used by the member, or which may be under his control.

G. ALTERING ACCESSORIES: Members shall not alter, deface, or in any way change any part or accessory of any city property.

H. MAINTAINING NEAT, CLEAN, AND ORDERLY CONDITION: Members shall maintain offices and vehicles used by them in a neat, clean, and orderly condition.

**3.19   UNAUTHORIZED EXPENDITURES:**

Obligation of funds or financial liability shall not be incurred in the name of the police department or the City of San Antonio by any member of the department unless authorized by the chief of police pursuant to ordinance.

**3.20   NOTICE OF SICK LEAVE:**

Notice that a member is sick or injured and cannot report for duty will be made to his immediate supervisor.

**3.21   FEIGNING ILLNESS OR INJURY:**

No member shall feign illness or injury.

**3.22   ILLNESS WHILE ON-DUTY:**

When a member becomes sick while on-duty to the extent he must leave his duty station, he shall immediately notify his supervisor.

**3.23   RESTRICTIONS ON ACTIVITIES WHILE SICK, INJURED, OR ON LIMITED DUTY:**

A. REMAIN AT RESIDENCE: Members, while on sick or injury leave, shall remain at their place of residence unless it is necessary for them to go to a doctor, hospital, or pharmacy. If for medical reasons it should be necessary for a sick or injured member to stay at some location other than his residence, he notifies his supervisor who shall ensure the new temporary address is made a matter of record.

B. NO EXTRA EMPLOYMENT: Members shall neither engage in outside employment nor work any city overtime while on sick or injured leave. Members, after having been out on sick or injured leave, must complete one regular tour of duty before engaging in any outside employment or working city overtime. The overtime restriction may be waived in an emergency.

C. LIMITED OR LIGHT-DUTY STATUS: Members on limited-duty or light-duty status will not engage in any off-duty employment or work any overtime for the city. The overtime restriction on limited-duty may be waived during an emergency.



**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Section 200 – Rules and Regulations*



**3.24   *NEGOTIATIONS ON BEHALF OF SUSPECT*:**

A.   PARTICIPATE IN ARRANGEMENT: Members shall not participate in any arrangement between the suspect and the person who has allegedly suffered by the suspect's act which would result in the criminal escaping the penalty of the law, nor shall any member seek the continuance or dismissal of any case on behalf of the defendant in court for any reason.

B.   PROMISES: Members shall not make promises that cannot be fulfilled.

**3.25   *TRAFFIC STOPS WHILE NOT IN UNIFORM*:**

A.   OFF-DUTY: Off-duty officers, in uniform or not, shall not engage in traffic stops. In cases involving crashes or where probable cause exists for the offense of driving while intoxicated, off-duty officers should contact the dispatcher to request an on-duty officer to make the traffic stop or arrest traffic violators.

B.   ON-DUTY: On-duty officers, not in uniform, may make traffic stops only when their assignment requires such traffic stops and when such traffic stops are approved by their division commander in writing. In such cases, the vehicle used in making the traffic stop shall have an emergency light prominently displayed and a siren as required for emergency vehicles by the Texas Motor Vehicle Laws.

C.   REQUEST ASSISTANCE: On-duty officers, not in uniform, other than that situation outlined in paragraph B, shall not make traffic stops. If there is a need to stop a traffic violator, the non-uniformed officer shall request a uniformed officer in a marked vehicle to make the traffic stop.

**3.26   *TREATMENT OF PRISONERS*:**

Prisoners shall be protected in their legal rights, given humane treatment, and shall not be subjected to verbal abuse or unnecessary physical violence.

**3.27   *GIVING INFORMATION IN INTERNAL INVESTIGATIONS*:**

A.   DUTY TO GIVE INFORMATION: A member shall, when requested, answer questions, render statements, or surrender material relevant to a Professional Standards Section investigation.

B.   GARRITY WARNING: Any member who is the subject of a Professional Standards Section investigation gives a written report, provided he is advised:

1.   The report is for departmental purposes only;

2.   The report will not be used against him in any subsequent criminal investigation or prosecution; and

3.   Should he fail to give a written report, a lawful order to do so will be given, and failure to follow such an order will result in disciplinary action.

**3.28   *RESPONSIBILITY TO KNOW LAWS AND PROCEDURES*:**

A.   LAWS AND ORDINANCES: Members shall learn and thoroughly understand the laws and ordinances which they are charged with enforcing.

B.   WRITTEN DIRECTIVES: Members shall familiarize themselves with all written directives which are published by the department and which affect their assignment.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Section 200 – Rules and Regulations*



C. PENALTY FOR VIOLATIONS: Violation of any lawfully adopted departmental rule or regulation by any department employee who is subject to same shall be sufficient cause for suspension or termination in accordance with applicable law and Fire and Police Civil Service Commission procedure, irrespective of whether the rule or regulation is part of the originally promulgated rules and regulations, or is contained in a subsequent general or special order, directive, or other amendment to the rules.

D. LACK OF KNOWLEDGE: Lack of knowledge of such rules or regulations shall never be a defense to any disciplinary action if said rules or regulations have been disseminated or posted as set forth in the regulations and if the employee has had a reasonable opportunity to become familiar with the rules and regulations.

## 3.29 *SOLICITING SPECIAL PRIVILEGES:*

A. FOR PERSONAL GAIN: Members shall not use their official position to solicit special privileges for themselves or others.

B. SOLICITING CITIZENS' PETITION: Members shall not request the aid of any citizen to have him transferred within the department from one classification of work to another, nor to have him transferred from one beat or district of the city to another.

## 3.30 *CONSORTING WITH PERSONS OF ILL-REPUTE*:

A. Members shall limit their personal and professional associations to persons of good character and whose reputations are beyond reproach.

B. Members shall not associate with known or suspected criminals where said associations do or tend to bring the department and/or the member into disrepute. Generally, familial associations are not prohibited by this rule. However, where an association is with a family member who still engages in criminal activity, or where the association does or tends to further criminal conduct on the part of the family member, those associations are prohibited. Associations with known or suspected criminals in furtherance of a member's duties are not prohibited by this rule.

## 3.31 *DISPLAYING OR DISCHARGING FIREARMS:*

A. DISPLAYING FIREARM WHILE NOT IN UNIFORM: No officer, whether on or off-duty, while not in uniform, shall wear his weapon on the outside of his clothing in such a manner it causes alarm.

B. DISPLAYING FIREARM UNNECESSARILY: Members shall not unnecessarily display their firearms.

C. DISCHARGING FIREARMS: Officers may discharge firearms in the following circumstances only:

   1. At target practice;

   2. To destroy an animal in conformance with departmental procedures;

   3. In defense of one's life or the life of another; or

   4. To hunt wild game, while properly licensed and in conformance with state law.

D. REPORT REQUIRED: Any officer discharging a weapon accidentally or intentionally, except on the target range or while lawfully hunting wild game, shall immediately report the incident in writing to his immediate supervisor.



**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Section 200 – Rules and Regulations*



**3.32   *ACTIVITIES OF MEMBER WHILE UNDER SUSPENSION:***

  A.   PROHIBITED ACTIVITIES: Officers of the department while under suspension shall not:

   1.   Wear the San Antonio Police Department uniform or any part of the uniform;

   2.   Represent themselves as members of the San Antonio Police Department;

   3.   Carry or display their San Antonio Police Department badge or identification;

   4.   Engage in outside employment which requires an extension of police services; nor any form of outside employment prohibited by existing SAPD General Manual procedures governing outside employment; or

   5.   Exercise the power or authority of a police officer of the City of San Antonio, Texas.

  B.   RIGHTS AND PRIVILEGES: Officers of the department while under suspension have only the rights and privileges afforded a private citizen regarding the carrying of any weapon.

**3.33   *ARRESTS IN PERSONAL QUARRELS:***

Members, while off-duty, shall not make arrests in quarrels in which they are personally involved or those in which their families are involved, except when immediately necessary to prevent bodily injury or death.

**3.34   *MAINTAINING CERTIFICATION:***

Each officer shall maintain minimum standards for retention of his license issued by the Texas Commission on Law Enforcement Standards and Education.

**3.35   *REPORT AN ARREST, CRIMINAL CHARGE, OR INDICTMENT:***

Any member arrested, charged with, or indicted for a state criminal offense, in any state, which is above the level of a class C misdemeanor or which is a class C misdemeanor and the class C misdemeanor involves the duties and responsibilities of office, or for a federal criminal offense, must immediately provide the Office of the Chief of Police with written notification of such incident. The member must provide the Office of the Chief of Police with the name of the arresting agency, a description of the nature of the charges, and the style, court and cause number of the charge or indictment, if any.

## SECTION 4.00 ATTENTIVENESS TO DUTIES

**4.01   *MEMBERS SUBJECT TO DUTY:***

While within the corporate limits of the City of San Antonio, officers of the San Antonio Police Department will consider themselves available for duty in any emergency situation, regardless of their actual duty status. On-duty officers shall carry their police identification and an approved weapon. Off-duty officers shall carry their police identification and should carry an approved weapon.

  A.   NONEMERGENCY ACTIONS: When an officer, not on-duty, has a matter come to his attention that is not an emergency situation requiring immediate action, he shall call the police dispatcher and request the assignment of an on-duty officer. Once the on-duty officer has arrived, the off-duty officer will not interfere or participate in the incident unless requested to do so by the officer(s) assigned to handle the incident.

  B.   AUTHORITY OUTSIDE CITY LIMITS WHILE OFF-DUTY: An officer, while on off-duty status outside the city, has only the rights, authority, and privileges of a private citizen.



**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Section 200 – Rules and Regulations*



C.   AUTHORITY OUTSIDE CITY LIMITS WHILE ON ASSIGNMENT: Police officers on an assignment outside the city, contact the agency having jurisdiction, and seek the assistance of its officers in any action to be taken. Any action taken will be confined to what is necessary to accomplish the assignment.

**4.02   *ALERTNESS REQUIRED OF MEMBERS:***

Members shall at all times be attentive to their duties and by their alertness and observation, and demonstrate their interest in their work.

**4.03   *REQUIREMENT TO TAKE ACTION:***

On-duty members are required to take prompt and effective police action conforming to departmental policies with respect to violations of laws and ordinances and matters affecting public safety coming to their attention, or of which they have knowledge.

**4.04   *REPORTING FOR DUTY:***

Members, unless otherwise directed, shall report for duty or present themselves at the time and place specified by proper authority. They shall be properly uniformed, or dressed, and equipped.

**4.05   *AVAILABILITY WHEN ON-DUTY:***

No member while on duty shall conceal himself, except for some police purpose. Members shall keep themselves immediately and readily available at all times when on-duty.

**4.06   *ON-DUTY ACTIVITIES*:**

Members shall not devote any of their on-duty time to any activity other than that which relates to their duty assignment. Members shall not enter places of amusement while on-duty, except for police purposes. Members shall not remain at any one place longer than is necessary to accomplish a police objective.

**4.07   *PROMPT RESPONSE TO ALL CALLS:***

Officers shall respond without delay to all calls for police service from citizens or other members. Immediately upon completion of the call, officers shall notify the dispatcher of their return to service.

**4.08   *REPORTING HAZARDS AND ASSISTING THE PUBLIC:***

Members observing anything of a dangerous or hazardous nature, citizens in distress, anything that might occasion public inconvenience, or seems irregular or offensive shall ensure proper action and report the incident in writing. Members assist the public and not avoid this responsibility.

**4.09   *DUTY TO REPORT CRIMES:***

Members receiving or possessing facts or information relative to a criminal offense shall not conceal, ignore, distort, or retain such facts or information, but will report such facts. Members will have a continuing duty to report facts and information relative to criminal offenses until the criminal offense has been reported in writing through proper channels.

**4.10   *DUTY TO REPORT INCIDENTS:***

Members shall immediately report the following categories of incidents, in addition to other incidents covered by these rules and departmental procedures, in accordance with the report writing procedures of the department.

 **SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Section 200 – Rules and Regulations* 

A.  TRAFFIC CRASH INVOLVING MEMBER: Members shall immediately report any traffic crashes in which they are involved.

B.  ON-DUTY INJURY: Members shall immediately report any personal injuries received in the line of duty.

C.  OFF-DUTY INJURY: Members shall immediately report any off-duty injuries which are apt to interfere with the performance of duties.

D.  INJURY OR PROPERTY DAMAGE CAUSED BY MEMBER: Members shall immediately report all property damage or injuries caused to other persons while in the performance of duty.

E.  INCIDENTS WHERE THE CITY MAY BE LIABLE: Members shall immediately report all incidents in which it appears the City of San Antonio may be liable for damages.

F.  DANGER TO PUBLIC HEALTH OR SAFETY: Members shall immediately report any conditions which might endanger the public health or safety.

G.  SUIT OR LEGAL PROCESS AGAINST MEMBER: Members shall immediately report any suits or legal processes filed against them by reasons of acts performed by them in the line of duty.  Personnel are to bring the original citation to the Chief's Office and sign a form requesting Legal Representation, which will be forwarded to the City Attorney's Office.  In the event personnel receive or are served with a suit or legal process after normal business hours, (0745-1630 hours, Monday – Friday), they shall report to the Office of the Chief the next business day with the original citation.

H.  DAMAGE TO CITY PROPERTY: Members shall immediately report damage to any city property.

**4.11  *REQUIRED TO TAKE AND MAINTAIN NOTES:***

Field officers shall carry notebooks or notepads to record the details of any police action they might take. All officers will take and keep notes of the police actions in which they are involved. Data pertinent to cases investigated will be kept and maintained by the officer involved.

**4.12  *OFFICIAL REPORTS:***

A.  COMPLETION OF REPORTS: Members shall complete reports promptly, accurately, and in conformance with the report writing procedures of the department.

B.  SUBMISSION OF REPORTS: Members shall complete and submit all reports prior to going off-duty.

C.  FORM AND CONTENTS: Members' reports shall be professionally written in good grammatical form and shall not contain slang, profanity, colloquial expressions, or insulting racial terminology, except when the language is a quotation and is essential to the investigation, a part of the offense, or related to the officer's action. The public portion of the report shall contain only the information required therein and shall not contain any information which is privileged or confidential. Information to be restricted from the public portion of the report includes:

1.  Matters relating to investigative techniques or procedures;

2.  Opinions or judgments of the officer;

3.  Facts tending to identify suspects or informants; or

4.  Information which should be confidential and which relates to a continuing investigation.




# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Section 200 – Rules and Regulations*

**4.13   *DUTY TO TAKE ACTION:***

Officers are charged with the responsibility to enforce local ordinances, state laws, and federal statutes, to preserve the peace, and to protect lives and property. All officers will take immediate action to prevent any obvious felony offense, or to arrest, if reasonably possible, any known felony offender, and to protect all persons and property from imminent harm.

**4.14   *COURTESIES ACCORDED THE NATIONAL COLORS AND ANTHEM:***

Members of the department shall salute the National Colors during the playing of the National Anthem with the hand salute appropriate to their dress:

1.   Full Uniform with Headgear – At the first note of music: stand at attention executes a military salute;

2.   Uniform without Headgear – At the first note of music: stand at attention hold this position until the last note of music has been played; or

3.   Relaxed Apparel or Civilian Attire – At the first note of music: stand at attention place right hand over heart.

**4.15   *RESPONSIBILITY FOR INTERNAL INVESTIGATIONS:***

A.   FORMAL INVESTIGATIONS: The Professional Standards Section has the responsibility for investigating allegations of non-criminal misconduct by members of the department.

B.   INVESTIGATION OF MEMBERS: Members who have a reason to believe another member of the department should be investigated shall write a report to the commander of the Professional Standards Section giving the details of that belief.

C.   PRELIMINARY INVESTIGATIONS: Supervisory officers may conduct preliminary investigations under the following circumstances:

1.   Only to the extent necessary to determine the validity of a complaint or to provide justification for an investigation; or

2.   If a violation is occurring and the offender may escape detection if an investigation is delayed.

**4.16   *ABSENCE FROM ASSIGNMENT:***

Members shall not leave their beats or assigned areas except in the line of duty, upon authorization of a supervisor, or at the end of a scheduled tour of duty.

**4.17   *COOPERATION WITH OTHER AGENCIES:***

Members shall cooperate with all agencies engaged in the administration of criminal justice and other public departments, giving to each all aid and information they might be entitled to receive.

**4.18   *RELATIONS WITH NEWS MEDIA:***

Members shall be open, honest, and cooperative with members of the news media, whenever possible, provided such actions are consistent with the statutes of the State of Texas and the policies of the department.

 

## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Procedure 303 – Disciplinary Procedures*

| Office with Primary Responsibility: | COP | Effective Date:<br>Prior Revision Date: | May 04, 2012<br>**March 01, 2011** |
|---|---|---|---|
| Office(s) with Secondary Responsibilities: | PSC, PNC, TSC, FTC, IDC, SSO | Number of Pages: | 18 |
| Forms Referenced in Procedure: | SAPD Form #61-LF,<br>SAPD Form #200 OR | Related Procedures: | 402 |

## .01 INTRODUCTION

A. This procedure establishes a process to provide for the non-criminal investigation and discipline, when necessary, of sworn members for alleged or suspected violations of department rules, regulations, policies, or procedures, which may regulate the conduct of sworn members.

B. When a complaint focuses on a civilian member, the non-criminal investigation and discipline, when necessary, is determined by the civilian member's Division Commander or in accordance with any applicable administrative directives of the City.

C. This procedure does not supersede any criminal investigation for alleged violations of criminal laws or statutes by members of this Department.

## .02 POLICY

A. The Department is accountable for all official acts of its employees. Therefore, the Department holds its members to a high standard of conduct and discipline in order to preserve an essential relationship of trust and confidence with the community they serve.

B. Furthermore, the Department adheres to and practices progressive discipline. This allows for a range of sanctions that take into account the circumstances of individual matters while ensuring that discipline is commensurate with continued misconduct.

C. To achieve the desired degree of effectiveness, disciplinary procedures address considerations and expectations from the following three perspectives:

1. Community or external concerns:  An open and positive relationship with the citizens of this community must be preserved. Consequently, the Department accepts all complaints, regardless of form, source, or substance, and initiates investigative action appropriate to the seriousness of the complaint.

2. Departmental or internal concerns:  A consistent and fair disciplinary system supports an effective operational environment. The Department provides corrective action for a member who demonstrates a need for behavioral correction and commends proper conduct and judgment.

3. Employee concerns:  Members should have a reasonable expectation they may exercise prudent judgment in a fair, lawful, and impartial manner while in the proper discharge of their duties and an expeditious and equitable process of disciplinary review will evaluate their actions.

D. The Internal Affairs Unit shall coordinate all investigations of alleged non-criminal misconduct by sworn members of the Department in accordance with this procedure.

E. The Chief of Police shall determine which unit or Department member shall investigate allegations of criminal misconduct made against a member of the Department.

## .03 LINE COMPLAINTS

A. Line complaints generally constitute disciplinary matters limited to and involving a minor variance from the routine activities and responsibilities of the sworn member in question.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Disciplinary Procedures*



B.   Line complaints are subdivided as follows:

1.   Line Supervisory "Type A" Complaint - The complainant requests contact by the sworn member's supervisor;

2.   Line Supervisory "Type B" Complaint - The complainant does not wish to be contacted by a supervisor but relates a potentially substantive problem or relates only nonspecific or general information.

C.   The sworn member's immediate supervisor initially addresses line complaints, generally resulting in complainant satisfaction from the supervisor's initial contact. When appropriate, the Section Commander, with concurrence from the Division Commander, addresses the sworn member's behavior with counseling, a written reprimand, or a suspension of up to three calendar days.  (Anything less than a one (1) day suspension is not considered discipline.)

1.   All line complaints shall be investigated by the officer's chain of command within twenty-one (21) calendar days from the date of the written complaint.

a.   The investigation shall be confined strictly to the complaints detailed in the complaint investigation packet.

b.   If the member does not agree with the contemplated disciplinary action within five (5) calendar days, the case will be forwarded to the Internal Affairs Unit for investigation.

c.   Complaints investigated through the chain of command do not entitle the officer to have an attorney present during interviews with their commanding officer.

d.   During the five (5) calendar day's time period nothing prohibits an officer from seeking advice from an attorney or an Association representative.

2.   If the sworn member is the rank of Captain or above, or has no Captain in their chain of command, the officer's Division Commander, Bureau Commander or the Chief of Police or his designee as appropriate, will investigate the complaint.

D.   All line complaint disposition reports shall be forwarded to the Internal Affairs Unit for review and disposition.

## .04   FORMAL COMPLAINTS

A.   Formal complaints generally constitute matters involving conduct that exhibits a significant variance from behavioral expectations established through formal training, departmental rules, regulations, policies, or procedures which regulate a sworn member's conduct.

B.   Formal complaints include, but are not limited to, the following:

1.   Activities that deal with significant behavioral infractions;

2.   Any conduct that if proven would constitute a crime;

3.   Any conduct that exhibits the potential to require stringent disciplinary action in the form of a suspension that exceeds three (3) calendar days;

4.   Any allegation of harassment/discrimination;

5.   Any allegation of racial profiling;

6.   Any allegation of unnecessary or excessive force; or

7.   Any other incident that may require formal disciplinary proceedings in order to be properly resolved.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Disciplinary Procedures*



C. Sworn members who receive written complaint notification of a formal complaint from the Internal Affairs Unit may request the complaint be submitted to the expedited disciplinary track method.

    1. The request must be made in writing to the Office of Chief with a copy of the formal complaint notification attached.

    2. Both the sworn member and the Chief must agree to submit the matter to the expedited disciplinary track for an expedited disciplinary finding.

    3. Any disciplinary action must be agreed upon by the sworn member and the Chief, and must be enacted within thirty (30) calendar days of the agreement.

D. A suspension agreed to by a member may not be appealed or altered by the Civil Service Commission, an arbitrator, or any court.

E. In no event can the expedited disciplinary track be requested within sixty (60) calendar days of the expiration of the complaint's one-hundred and eighty (180) calendar day timeline in Chapter 143 of the Local Government Code.

F. The San Antonio Police Department's Complaint Matrix shall be used as a guide when addressing disciplinary action.

## .05  SERVICE COMPLAINTS

A. Service complaints constitute citizen dissatisfaction with police services for reasons other than complaints of officer misconduct.  Service complaints include, but are not limited to the following:

    1. Call response times – Not due to an officer's negligence;

    2. Handling of a civil matter – Due to Department policy or civil law;

    3. Discretionary call screening;

    4. Unavailability or delay of other police services;

    5. Any other complaint that does not violate policy or procedure or involve officer misconduct.

B. Supervisors receiving service complaints from citizens shall document the complaint to include complainant contact information, the nature of the complaint, and details specific to the incident that may assist in addressing the dissatisfaction.  This documentation shall be forwarded directly to the Internal Affairs Unit on written or electronic correspondence.  Supervisors should communicate to citizens making service complaints that their concerns will be documented with the intent of providing feedback on Department policy.

## .06  PARTIES TO A COMPLAINT (COMPLAINANTS)

A. All complaints of alleged misconduct by sworn members, except complaints initiated by the Department, must identify a principal complainant or aggrieved party from outside the Department.

A. Complaints of alleged misconduct by sworn members that are initiated from within the Department shall list the "Administration" as the complainant.

## .07  COMPLAINT PROCESSING

A. The Department receives complaints in a variety of forms and from a number of sources.

 

## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Procedure 303 – Disciplinary Procedures*

B. Members of the Department shall make every effort to ensure prompt and courteous responses or referrals of any complaint, regardless of the circumstances.

C. Referring Complaints

   1. Copies of all complaints received or handled by members of the Department shall be forwarded to the Internal Affairs Unit.

   2. The initial receipt of a complaint shall be processed as follows:

      a. Personal Appearance: A member who receives a complaint through personal contact shall direct the complainant as follows:

         (1) To the supervisor of the officer who is the subject of the complaint; or

         (2) If the officer's supervisor is unavailable, to the nearest available supervisor.

      b. Telephonic: A member who receives a complaint by telephone shall forward the complainant as follows:

         (1) To the supervisor of the officer who is the subject of the complaint, if readily available, or;

         (2) To the Communications Unit Supervisor who shall determine the availability of a supervisor in the subject officer's chain of command and dispatch the supervisor to contact the complainant. If the identity of the subject officer is unavailable, any supervisor from the Patrol Division is dispatched to contact the complainant.

         (3) To the Internal Affairs Unit during business hours, 0800-1800 hours.

      c. Correspondence: A member who receives a written complaint shall route the complaint to his immediate supervisor who shall handle in accordance with this policy.

**.08  COMPLAINT INVESTIGATION RESPONSIBILITIES**

A. Each individual officer must realize and accept the responsibility of confidentiality in order to avoid compromising the integrity of the disciplinary process. Officers shall not discuss details of any complaint with persons outside of the disciplinary process.

B. Supervisory Officers

   1. When supervisory officers receive complaints from the Internal Affairs Unit, they shall initiate action appropriate to the type of complaints received, line, or formal complaints.

   2. Supervisory officers handling line supervisory "Type A or B" complaints shall:

      a. Type A - Contact and interview the complainant in accordance with Section .09;

      b. Type B – Although the complainant does not wish to be contacted, the supervisor shall attempt to contact and encourage feedback regarding the Departmental action taken by utilizing the following standardized statement and question:

         (1) Statement: it is the policy of our Department to contact you regarding your complaint to let you know how your complaint was resolved,

         (2) Question: How would you like to be contacted?



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### Procedure 303 – Disciplinary Procedures



    c. Interview the subject officers of the complaints in accordance with Section .09;

    d. Evaluate the information and address complaints that may require minor disciplinary action;

    e. Prepare reports upon disposition of the complaint which include the information provided by the complainants, the sworn members, and supervisory evaluation of the complaints, including the methods in which complaints were addressed; and

    f. Forward the line complaint disposition reports, together with any other pertinent information, through their chain of command to their Section Commanders or Unit Directors.

  3. Supervisory officers addressing formal complaints shall:

    a. Immediately notify the Section Commanders or Unit Directors of any cases where an officer is involved in allegations of suspected criminal activity;

    b. Contact and interview the complainants in accordance with Section .09;

    c. Refer the complainants to the Internal Affairs Unit to initiate formal complaints;

    d. Interview and obtain written reports from the subject officer in accordance with Section .09;

    e. Obtain necessary information, which assists in the evaluation of the complaints;

    f. Prepare preliminary complaint investigation packets including all the information provided by the complainants, the sworn members' reports, and the supervisors' reports;

    g. Supervisors will not enumerate or make recommendations as to the specific rule, regulation, policy, or procedure violated, nor will they make recommendations as to punishment. Supervisors will only recommend either no disciplinary action is necessary or the complaint should be forwarded to the Internal Affairs Unit for further investigation; and;

    h. Route the preliminary complaint investigation packets through the chain of command to their section commanders or unit directors.

C. Section Commanders/Unit Directors

  1. Section commanders or unit directors receiving complaints shall assign supervisory officers to investigate the complaints.

  2. Section commanders and unit directors receiving disposition reports on line complaints shall:

    a. Review and evaluate the supervisors' disposition of line complaint; and

    b. Implement disciplinary action, when necessary, up to a three (3) day suspension (with concurrence of the division commander) and;

    c. Forward the line complaint disposition reports to the Internal Affairs Unit through their chain of command.

  3. Section commanders receiving complaint investigation packets on formal complaints shall:

    a. Review and evaluate the supervisor's preliminary complaint investigation packets;

    b. Forward the preliminary complaint investigation packets, together with their recommendations, to the division commander;



## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Procedure 303 – Disciplinary Procedures*



   c. Upon receiving concurrence from the ranking officer on duty, temporarily relieve from duty a sworn member accused of serious misconduct or suspected criminal activity; and

   d. Immediately notify the division commander and the Internal Affairs Unit of such action.

D. Division Commanders

  1. Division commanders shall maintain a confidential disciplinary log strictly for the purpose of ensuring timely disposition of complaints against sworn members.

  2. Division commander receiving complaints from the Internal Affairs Unit shall assign Section Commanders or Unit Directors to investigate the complaints.

  3. Division Commanders receiving line complaint disposition reports shall review the reports and recommendations, and based on the merits, substance, and gravity of the case:

   a. Request further preliminary investigation, if necessary;

   b. Concur with recommended disciplinary action, when necessary, up to a three (3) day suspension;

   c. Forward the line complaint disposition reports to the Internal Affairs Unit.

  4. Division commanders receiving complaint investigation packets concerning formal complaints shall review the contents and recommendations, and based on the same criteria mentioned in the preceding paragraph:

   a. Request further preliminary investigation, if necessary, under exigent circumstances; and

   b. Forward the formal complaint investigation packets to the Internal Affairs Unit.

E. Internal Affairs Unit

  1. The Internal Affairs Unit shall receive line complaint disposition reports and formal complaint investigation packets from division commanders.

  2. The Internal Affairs Unit shall investigate formal complaints of sworn member misconduct and present the findings to the Chief's Advisory Action Board.

   a. The Internal Affairs Unit shall send Formal Complaint Notices to officers who become the subject of a formal complaint.

   b. The Internal Affairs Unit shall send Deactivation Notices to officers who's Formal Complaints have been dismissed for cause.

  3. Officers under investigation shall be informed forty-eight (48) hours prior to being interrogated or asked to otherwise respond to an investigation of the general nature of the investigation and shall be provided with sufficient information to be reasonably apprised of the allegations.

  4. Officers shall be allowed to review, but not copy verbatim or photocopy, any information as listed in the current Collective Bargaining Agreement.

  5. No part of the information provided to the officer for review may be reproduced, transmitted in any form by any means, electronic, or mechanical, including photocopying, recording or by any information storage and retrieval system. Officers shall not release the provided information to any person other than their attorney or representative.

 **SAN ANTONIO POLICE DEPARTMENT**
**GENERAL MANUAL**
*Procedure 303 – Disciplinary Procedures* 

F.  Homicide Unit

   1.  Shall investigate police vehicle crashes; and

   2.  Shall present findings of investigations to the Chief's City Vehicle Accident Advisory Action Board.

G.  Police Legal Advisor

   1.  The Police Legal Advisor shall review disciplinary cases investigated by the Internal Affairs Unit prior to their submission to the Chief's Advisory Action Board; and

   2.  Functions in an advisory capacity to the Chief's Advisory Action Board and Chief's City Vehicle Accident Advisory Action Board for the purpose of legal interpretation of any source which regulates a sworn member's conduct.

H.  The Chief of Police

   1.  Shall review the Chief's Advisory Action Board and Chief's City Vehicle Accident Advisory Action Board recommendations for discipline and implements such action as he deems appropriate in each individual case; or

   2.  May implement, at his discretion, immediate administrative or disciplinary action without the Chief's Advisory Action Board or Chief's City Vehicle Accident Advisory Action Board participation and has ultimate discretion to decide whether discipline should be implemented against a sworn member.

## .09  COMPLAINT INTERVIEWS

A.  Supervisory officers who conduct formal or line complaint interviews with complainants or witnesses adhere to the following process:

   1.  The interviews shall occur at a time and place reasonable under the circumstances;

   2.  Complainants shall be advised the Department may not implement formal disciplinary actions against sworn members without signed, sworn complaints, although oral complaints may receive supervisory review appropriate to the allegations; and

   3.  Written statements shall be taken only by supervisory officers assigned to the Internal Affairs Unit.

B.  Supervisory officers who conduct formal or line complaint interviews with sworn members under investigation for any form of alleged non-criminal misconduct adhere to the following process:

   1.  The interviews shall occur at a time and place reasonable under the circumstances;

   2.  A sworn member may, at his option, request a supervisory officer accompany him to a complaint interview, if the interview is conducted by the Internal Affairs Unit.  This request is not binding on the supervisory officer;

   3.  A sworn member who is subjected to an interview and asked to write a report by a supervisory officer in the course of a non-criminal complaint investigation must submit a report immediately upon request.  The report shall be written on SAPD Form #200-OR, *Officer's Response to a Complaint*, and submitted to the supervisory officer.

C.  A sworn member of the Internal Affairs Unit holding the rank of sergeant or above, when conducting a complaint interview with a sworn member, may request, or order if necessary, a sworn member of any rank to:

   1.  Submit a written report;

 

**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Procedure 303 – Disciplinary Procedures*

   2. Answer interrogatories;

   3. Provide physical evidence; or

   4. Otherwise cooperate in any manner with Internal Affairs Unit personnel during an investigation.

## .10  POLYGRAPH USAGES

A. The Department considers the polygraph a useful investigative resource which may be used as an administrative tool.

   1. When the introduction of the polygraph into an investigation of a citizen's complaint appears necessary, the Department will first examine the complainant.

   2. A licensed examiner administers the polygraph test to the sworn member only when the complainant's results indicate truthfulness.

     a. A non-member administers the polygraph examination to a sworn member to prevent any perception of bias; and

     b. To avoid any undue embarrassment to an officer or the Department, the polygraph examination shall not be administered to an officer while in uniform.

B. The Department uses polygraph examination results as follows:

   1. The Chief's Advisory Action Board and Chief of Police review the complainant's polygraph examination results; and

   2. Only the Chief of Police reviews the sworn member's polygraph examination results.

## .11  COMPLAINT DOCUMENTATION RETENTION

A. Individual Officers

   1. An officer may maintain personal records involving matters of potential disciplinary action which involve him.

   2. The only official disciplinary documentation permitted in any officer's possession is that which the officer personally prepared.

B. Supervisory Officers

   1. Many supervisory officers maintain informal notes regarding the activity of their personnel. However, the personal retention of any forms, reports, or official documentation regarding formal or informal disciplinary investigations of direct subordinates is prohibited.

   2. Supervisory officers involved in disciplinary investigations shall forward all documentation under seal to the Internal Affairs Unit through their chain of command at the earliest possible time.

## .12  CHIEF'S ADVISORY ACTION BOARD

A. The Chief's Advisory Action Board, hereafter referred to as the Board, means the combined Citizen Advisory Action Board and Police Advisory Action Board.

   1. The Citizen Advisory Action Board:

 **SAN ANTONIO POLICE DEPARTMENT**
**GENERAL MANUAL**
*Procedure 303 – Disciplinary Procedures* 

    a.   Consists of members selected in accordance with the current Collective Bargaining Agreement;

    b.   A quorum consists of three members (provided there are at least six (6) active/participating appointed members);

    c.   Each member has one (1) vote; and

    d.   Citizen members must be present to hear the following types of cases:

        (1)  Cases involving the use of force, bodily injury, and unlawful search and seizure; and

        (2)  Any case in which the officer who is the subject of a complaint or a complainant requests citizen member participation, if it is reasonably possible based on the workload and availability of the citizen members.

    e.   Cases not meeting the above criteria may be heard without citizen member's participation.

  2.  The Police Advisory Action Board:

    a.   Consists of sworn members as specified in the current Collective Bargaining Agreement.

    b.   Membership is open to any officer who has completed his initial probationary period and has not incurred a suspension during the previous twelve months.

    c.   A quorum consists of five (5) members.

    d.   Each sworn member has one vote.

    e.   All sworn members vote regardless of the rank of the respondent.

    f.   A sworn member excuses his participation in any case in which he is a respondent, has participated in, or has witnessed.

    g.   The Chief of Police may allow the following to attend the Chief's Advisory Action Board meeting:

        (1)  A San Antonio Police Officers' Association representative;

        (2)  The Police Legal Advisor; and

        (3)  Internal Affairs Unit representatives.

B.  The Chief's Advisory Action Board is designed to deal with disciplinary problems as equitably as possible in pursuing the achievement of the following four objectives:

  1.  Correct the behavior of an individual sworn member who is not in conformance with departmental standards or objectives;

  2.  Instill a preventive affect for any other sworn member who may be engaged in or contemplating similar misconduct;

  3.  Demonstrate that compliance with departmental mandates is uniformly required of each sworn member; and

  4.  Promote making the disciplinary process transparent and stress the importance of community involvement.



**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL

*Procedure 303 – Disciplinary Procedures*



C. All members of the Chief's Advisory Action Board shall sign a pledge of confidentiality agreeing to maintain the right of privacy for the accused sworn member and hold in confidence all allegations, facts, testimony, and evidence brought before the Board.

D. The effectiveness of the Board requires maintaining the integrity of the process, which is contingent on the following responsibilities.

　　1.　The Board Chairman:

　　　　a.　Serves as the custodian of all information concerning disciplinary cases that the Board reviews;

　　　　b.　Confines reviews of case jackets or confidential material to a designated area;

　　　　c.　Provides orientation for new Board members;

　　　　d.　Reviews published agendas at least seven days prior to each meeting; and

　　　　e.　Ensures proper rules of order are followed at meetings.

　　2.　Each Board Member:

　　　　a.　Protects the rights of the sworn member whose conduct is the subject of review by maintaining confidentiality relating to any discussions, correspondences, or proceedings; and

　　　　b.　Avoids any bias in the fulfillment of their obligations.

E. Cases presented to the Board for consideration are derived from the following sources:

　　1.　The Internal Affairs Unit as a formal complaint; or

　　2.　The Chief of Police, who may wish the Board consider a matter.

**.13  *CHIEF'S ADVISORY ACTION BOARD PROCEDURES***

A. Although a need to adhere to the following disciplinary hearing procedures exists, the Chief of Police reserves the right to exercise administrative discretion in the event of exceptional circumstances falling outside the limit, purpose, or scope of this process.

B. Board Procedures

　　1.　The Chairman makes a declaratory announcement about security for the protection of each respondent's privacy.

　　2.　The Chairman announces each case prepared for review by the Board. The Chairman may reset a case at the respondent's request, if sufficient cause exists.

　　3.　An Internal Affairs Unit representative outlines misconduct cases.

　　4.　The Board may then ask questions of the Internal Affairs Unit representative presenting the brief.

　　5.　The respondent is allowed the opportunity to speak before the Board by the Board Chairman. A respondent's absence at a hearing is not considered in the final deliberations and has no bearing on the outcome. The respondent's right to be heard is subject to the following limitations:

　　　　a.　The respondent may not have an attorney present or any other person as a representative;



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
*Procedure 303 – Disciplinary Procedures*



    b.   The respondent may not introduce references or character witnesses; and

    c.   The respondent may request to have a supervisor present who may provide input if requested by the Board. The sworn member directs such requests to their commanding officer, who then notifies the supervisor requested to appear. All such appearances are made on a voluntary, non-remunerated basis.

6.   The respondent may not grieve the failure to receive notice of a hearing by the Board, unless the failure is alleged to have been intentional.

7.   The Chairman shall advise the respondent of the following:

    a.   Testimony is voluntary;

    b.   Rules and decorum of the proceedings;

    c.   Questions may be asked by Board members; and

    d.   Their decision to speak may be withdrawn at any time without inference or penalty.

8.   Questions directed towards the respondent are restricted to those pertinent to the facts of the case and should avoid any form of accusation or debate.

9.   Upon completion of the testimony, the Chairman excuses the respondent after being advised any recommendations from the Board regarding the case are in an advisory capacity and the Chief of Police makes the final determination.

10.  The Chairman may elect to hear testimony from a complainant. Any testimony provided is strictly voluntary.

11.  The complainant may not have an attorney present or any other person as a representative. However, at the Chairman's discretion, they should be afforded the opportunity to have a non-legal representative present. This person's role should be to provide support to the complainant or witness and not be disruptive or an active participant.

12.  The Board will discuss the case, generally using the following guidelines:

    a.   The discussion process will be informal.

    b.   All dialogue shall be confined to the facts of the case and information presented as a result of the Internal Affairs Unit investigation or the testimony provided.

    c.   Discussion regarding the respondent's character is not permitted.

    d.   Discussion is directed toward the determination of whether the action of the respondent violates or does not violate an applicable standard.

13.  One of two determinations follows the discussion:

    a.   Ready to vote; or

    b.   Further investigation is required and the case is returned to the investigative source.

14.  On determination of "ready to vote," the Chairman calls for a finding in the case.

## .14  MISCONDUCT CASE FINDINGS



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Disciplinary Procedures*



A.  The first vote is directed towards determining a finding in the case.  This finding is determined to be one of the following:

   1.  "Unfounded" means the allegations reported did not occur.

   2.  "Inconclusive" means the allegations could not be proved or disproved.

   3.  "Sustained" means the allegations reported are found to have occurred.

   4.  "Justified" means the conduct complained of did occur, but was necessary and appropriate to accomplish a valid law enforcement objective.

B.  A majority vote must exist to determine any finding.  If a majority vote cannot be obtained after subsequent discussion and votes, the Chairman will make the final decision.

C.  Following a finding of "Sustained," a discussion shall be held to determine a recommendation for disciplinary action or other remedy.  The discussion should include:

   1.  Past practices or similar issues;

   2.  Legal aspects of issues involved;

   3.  Established guidelines or policies concerning escalating discipline affecting the issue; and

   4.  Past disciplinary record of the respondent.

   5.  Other remedies or alternative courses of action directed towards a behavior adjustment or awareness on the part of the officer include, but are not limited to:

      a.  Retraining courses, especially for pattern violations;

      b.  Job relocation, either temporary or permanent; or

      c.  Psychological evaluation and recommendation.

D.  The Chairman shall call for a vote by written secret ballot on the form provided for that purpose.  The voting process adheres to the following guidelines:

   1.  Each Board member lists a recommendation without influence from the others;

   2.  A majority vote controls;

   3.  Subsequent discussion and votes are conducted as necessary; and

   4.  Failure to achieve a majority decision is reflected on the record and submitted to the Chief of Police.

E.  The Chairman shall record the results and the recommendation of each Board separately and submits the necessary reports to the Chief of Police for final approval.  The recommendations of each Board are advisory in nature and non-binding on the Chief of Police.

## .15  *CHIEF'S CITY VEHICLE ACCIDENT ADVISORY ACTION BOARD*

A.  The Chief's City Vehicle Accident Advisory Action Board is designed to review all cases involving city (police) motor vehicle crashes involving sworn members.




**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Procedure 303 – Disciplinary Procedures*

B. The Chief's City Vehicle Accident Advisory Action Board shall consist of sworn members, as specified in the current Collective Bargaining Agreement.

C. Membership is open to any officer that has completed their initial probationary period and has not incurred a suspension during the previous twelve months.

D. A quorum consists of three (3) members.

E. Each member has one (1) vote.

F. All sworn members vote regardless of the rank of the respondent.

G. A sworn member is excused from voting on any case in which he is a respondent, has participated in, or has witnessed.

H. The Chief of Police may allow the follow to attend the City Vehicle Accident Advisory Action Board meeting:

1. A San Antonio Police Officer's Association representative;

2. The Police Legal Advisor;

3. A Homicide Unit representative; and

4. City of San Antonio Risk Management Representative.

I. Each sworn member of the Chief's City Vehicle Accident Advisory Action Board and attendees shall sign a pledge of confidentiality agreeing to maintain the right of privacy for the accused sworn member and hold in confidence all allegations, facts, testimony, and evidence brought before the Board. However, an attending SAPOA representative retains the right to discuss the matters of the CVAAB meeting with the SAPOA executive board, with the expressed purpose and only to the extent that a grievable issue comes into question.

J. The responsibilities of all members of the Chief's City Vehicle Accident Advisory Action Board shall be the same as those of the Police Advisory Action Board as outlined in Sections .10D and .11 of this procedure.

**.16 CITY VEHICLE ACCIDENT CASE FINDINGS**

A. A vote shall be taken to determine a finding in the case. This finding is to be either chargeable or non-chargeable.

1. "Chargeable" means the sworn member failed to exercise reasonable care in the operation of the city vehicle, deviated from established driving practices, and was the major cause of the crash.

2. "Chargeable Due to Contributory Factors" means the sworn member failed to exercise care in the operation of the city vehicle, deviated from established driving practices, and was a contributing factor to the crash based on unsafe speed and/or operation or violations of General Manual Procedure 609, *Emergency Vehicle Operations*.

3. "Non-chargeable" means the sworn member exercised reasonable care and caution, the same care and caution that would be exercised by an ordinary and prudent person in the same circumstances as the sworn member, in the operation of the city vehicle.

B. A majority vote must determine any finding. If a majority vote cannot be obtained after subsequent discussion and votes, the Chairman will make the final decision.

C. Following a finding of "Chargeable" or "Chargeable due to Contributory Factors," a discussion is held and information is presented to assign a point value to the crash.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Disciplinary Procedures*



D.  Point assessment for sworn members involved in police vehicle crashes is based on the following criteria:

   1.  Non-chargeable (0 points)

   2.  Chargeable due to Contributory Factors   (1 point)

   3.  Chargeable (2 points)

E.  Additional points are added to all "Chargeable" and "Chargeable due to Contributory Factors" crashes based on the severity of the crash as follows:

   1.  Damage to the city vehicle that renders the vehicle a total loss. (2 points) The damage is based on documentation provided by the Police Garage.

   2.  Damage to the city vehicle that exceeds $5,000 in repair costs but does not render the vehicle a total loss.  The damage is based on documentation provided by the Police Garage.  (1 point)

   3.  The crash resulted in serious bodily injury, excluding death, to any person(s).  (minimum 2 points) "Serious Bodily Injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

   4.  The crash resulted in bodily injury to any person(s).  (1 point) "Bodily Injury" means physical pain, illness, or any impairment of physical condition.

   5.  If unsafe speed and/or operation is determined to be a contributing factor.  (minimum 1 point) (Unsafe speed and/or operation are determined by the investigating supervisor's crash investigation, from the findings of a Traffic Investigation Detail investigation, and/or on recommendation from the findings of the Chief's City Vehicle Accident Advisory Action Board).

   6.  If a Chargeable or Chargeable due to Contributory Factors crash results in a death, no point value is assessed. The Chief of Police administers whatever discipline he deems appropriate.

F.  Following the assessment of a point value to the crash:

   1.  The Homicide Unit representative shall give the point assessment for each Chargeable and Chargeable due to Contributory Factors crash the sworn member was involved in during the preceding twenty-four (24) months (each crash <u>not</u> exceeding two (2) points total will be removed from consideration for the sworn member's cumulative point assessment total after twelve (12) months).

   2.  The Board shall then calculate the total point assessment for the sworn member.  This total is derived by adding the point assessment for the crash under review and the point assessment for crashes the sworn member was charged with as reported by the Homicide Unit representative in accordance with .16F1.

   3.  Calculations are based on the date of the crash, not the Board ruling date.

G.  Based on the sworn member's cumulative point assessment total, the Board recommends disciplinary action to the Chief of Police as follows:

   1.  1 to 2 points - Written Counseling

   2.  3 points - Written Reprimand

   3.  4 points - One (1) day suspension

   4.  5 points - Three (3) day suspension

 

## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Procedure 303 – Disciplinary Procedures*

    5.   6 points - Five (5) day suspension

    6.   7 points - Ten (10) day suspension

    7.   8 points or more - A minimum fifteen (15) day suspension with the possibility of an indefinite suspension or job reassignment for numerous crashes within the twenty-four (24) month period.

        *If the sworn member is charged with Manslaughter, Intoxicated Manslaughter, Intoxicated Assault, Criminal Negligent Homicide, Failure to Stop and Render Aid, or Driving While Intoxicated as a result of the crash, the recommended disciplinary action shall be "temporary suspension" until the disposition of the charge.*

H.   The Homicide Unit representative shall record the findings and point assessments in the sworn member's departmental driving record file.

I.   The Chairman shall record the results and the recommendation of the Board and submits the necessary reports to the Chief of Police with copies to the Internal Affairs Unit. The recommendations of the Board are advisory in nature and are non-binding on the Chief of Police.

J.   Any crash that results in a death, regardless of the ruling by the Board, is forwarded to the District Attorney's Office for review.

## .17 DISCIPLINARY IMPLEMENTATION

A.   Upon completing a review of the recommendations presented by each Board, the Chief of Police shall render a decision as to what disciplinary action, if any, is to be taken.

B.   With regard to any action other than suspension, the respondent's Division Commander shall ensure proper implementation of the member's disposition.

C.   Officers involved in two crashes (Chargeable or Chargeable due to Contributory Factors) within a twelve (12) month period will either be placed on special assignment or required to ride double with another officer until they pass a remedial driving course at the Training Academy. The assignment is made by the Chief of Police.

D.   With regard to suspension, the sworn member shall be given notice of the contemplated disciplinary action in accordance with the current Collective Bargaining Agreement.

E.   The Chief of Police, after hearing the sworn member's rebuttal, may decide that a change in discipline from the contemplated discipline is proper and implement an alternative form of discipline which may include a suspension.

F.   A record of any type of disciplinary action taken against a member shall be placed in the member's departmental personnel file.

G.   Any sworn member facing disciplinary action should refer to the current Collective Bargaining Agreement for details related to the initiation of an appeal, time frames, forfeiture of accumulated leave, and scope of the appeal process.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Disciplinary Procedures*



| LINE COMPLAINTS | FORMAL COMPLAINTS |
|---|---|
| **Suspensions – 3 Days or Less** | **Suspensions – More than 3 Days** |
| **Investigated via Chain of Command to Captains** | **Investigated via Internal Affairs to CAAB** |
| *Line complaints generally constitute disciplinary matters limited to and involving a minor variance from the routine activities and responsibilities of the sworn member.* | *Formal complaints generally constitute matters involving conduct that exhibits a significant variance from behavioral expectations. Formal complaints include, but are not limited to:*<br><br>○ *Significant behavioral infractions;*<br><br>○ *Potential to require a suspension beyond 3 days;*<br><br>○ *All allegations of unnecessary force; or*<br><br>○ *Any other incident that may require formal disciplinary proceedings in order to be properly resolved.* |

*"These are General Guidelines only – Disciplinary Actions may vary based on actual circumstances"*
**Captains should consult with a Deputy Chief, where any indications of questionable issues arise.**

| RULES AND REGULATIONS | | RULES AND REGULATIONS | |
|---|---|---|---|
| **Section** | **Title** | **Section** | **Title** |
| 2.02 | Chain of Command | 3.01 A. | Abide by Laws |
| 3.01 A. | Abide by Laws and Departmental Orders: Laws | 3.02 | Truthfulness of Members |
| 3.03 C. | Obey Lawful Orders: Unlawful Orders Prohibited | 3.03 A. | Obey Lawful Orders: Insubordination |
| 3.04 B. | Responsibility to Serve the Public: Courtesy | 3.04 C. | Responsibility to Serve the Public: Conduct and Behavior |
| 3.04 E. | Responsibility to Serve the Public: Police Action when not in Uniform | 3.05 A. – E. | Chemical Dependence |
| 3.04 F. | Responsibility to Serve the Public: Neutrality in Civil Actions | 3.07 B. – F. | Criticism of the Department: Affects Public Confidence |
| 3.06 | Relationship with Coworkers | 3.08 A. – F. | Unauthorized Release of Information: Release of Public Statement |
| 3.06 A. | Relationship with Coworkers: Mutual Respect | 3.11 A. – D. | Use of Intoxicants |
| 3.06 A, F. | Relationship with Coworkers: Mutual Respect and Working Relationships | 3.15 A. – C. | Gratuities, Loans, and Solicitations |
| 3.06 B, C. | Relationship with Coworkers: Courtesy and Respect to Supervisory Officers | 3.16 | Accepting Rewards |
| 3.06 D. | Relationship with Coworkers: Supporting Fellow Members | 3.17 A., B. | Outside Employment: Permission Required |
| 3.06 E. | Relationship with Coworkers: Support | 3.18 A. | City Equipment/Property: Improper or Negligent Handling |
| 3.09 | Information on Bulletin | 3.18 D. | City Equipment/Property: Inventoried property |
| 3.07 A. | Criticism of the Department: Defamatory | 3.18 E. | City Equipment/Property: Waste or Conversion |
| 3.18 B. | City Equipment/Property: Loss through Negligence | 3.19 | Unauthorized Expenditures |
| 3.18 C. | City Equipment Property: Safe Operation of Vehicles | 3.24 A., B. | Negotiations on behalf of Suspect |
| 3.23 A. | Restrictions on Activities While Sick, Injured or on Limited Duty: Remain at Residence | 3.26 | Treatment of Prisoners |
| 3.23 B. | Restrictions on Activities While Sick, Injured or on Limited Duty: No Extra Employment | 3.27 A., B. | Giving Information in Internal Investigations |
| 3.28 B. | Responsibility to Know Laws and Procedures: Written Directives | 3.29 A., B. | Soliciting Special Privileges |
| 4.01A. | Members Subject to Duty: Non Emergency Actions | 3.30 | Consorting With Persons of Ill Repute |
| 4.10 D. | Duty to Report Incidents | 3.31 C. | Displaying or Discharging Firearms: Discharging Firearms |
| 4.10 E. | Duty to Report Incidents: Incident Where The City May Be Liable | 3.32 A. – B. | Activities of Member While Under Suspension |
| 4.10 F. | Duty to Report Incidents: Danger to Public Health or Society | 3.33 | Arrest in Personal Quarrels |
| 4.12 B. | Official Reports: Submission of Reports | 3.35 | Report an Arrest, Criminal Charge, or Indictment |
| | | 4.06 | On Duty Activities |
| | | 4.15 A. – C. | Responsibility for Internal Investigations |



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Disciplinary Procedures*



| LINE COMPLAINTS | FORMAL COMPLAINTS |
|---|---|
| **Suspensions – 3 Days or Less** | **Suspensions – More than 3 Days** |
| **Investigated via Chain of Command to Captains** | **Investigated via Internal Affairs to CAAB** |
| *Line complaints generally constitute disciplinary matters limited to and involving a minor variance from the routine activities and responsibilities of the sworn member.* | *Formal complaints generally constitute matters involving conduct that exhibits a significant variance from behavioral expectations. Formal complaints include, but are not limited to:*<br><br>○  *Significant behavioral infractions;*<br><br>○  *Potential to require a suspension beyond 3 days;*<br><br>○  *All allegations of unnecessary force; or*<br><br>○  *Any other incident that may require formal disciplinary proceedings in order to be properly resolved.* |

*"These are General Guidelines only – Disciplinary Actions may vary based on actual circumstances"*
**Captains should consult with a Deputy Chief, where any indications of questionable issues arise.**

| PROCEDURES | | PROCEDURES | |
|---|---|---|---|
| **Section** | **Title** | **Section** | **Title** |
| 303.02 D. | Disciplinary Procedures: Policy | 313.04 A. | Use of City Vehicles: Authorized Use |
| 307.06 A. | Information Not Released: Police Incidents | 314.04 B. 2 | Command Notification: Officer is Detained or Arrested |
| 307.06 A1h | Information Not Released: Police Incidents | 501.05 B. | Use of Force: Application of Force |
| 309.05 C. | Weapons: Firearms Safety Rules | 601.07 C. – E. | Prisoners: Security of Prisoners – Escape Prevention |
| 309.05 E. | Weapons: Firearms Safety Rules | 604.10. E. F. | Family Disturbance/Violence: Family/Dating Violence/Disturbance Calls Involving a Sworn Member |
| 309.05 H. | Weapons: Firearms Safety Rules | 618 | Racial/Bias Profiling |
| 309.06 B. | Weapons: General Rules for Carrying Firearms: Sworn Officers | 701.05 B. 4b | Crime Scene Duties: Officers Responsibilities |
| 309.11 E. 2 | Weapons: Submitting Approval to Carry Shoulder Weapons | 705 | Officer Involved Shootings |
| 402.04 F | N-Code Reporting Program: Procedure | 902.07C | Leave and Absences Policies: Absences |
| 403.05 B. | Communications: Radio Transmissions | 918 | Harassment and Discrimination in the Workplace |
| 501.09A | Use of Force: Report Responsibilities | | |
| 503.01C | Execution of Arrest Warrant: Introduction | | |
| 505.05 E. | Misdemeanor Citation Release: Restrictions for Use | | |
| 506.03 B. | Traffic Law Enforcement:  Uniformed Enforcement Actions by Officers | | |
| 506.07 A. | Traffic Law Enforcement: Officer Conduct with Low Risk Traffic Violators | | |
| 507.04 A. B2, 3 D.W.I. | Arrest Procedures; Probable Cause for D.W.I or D.U.I. | | |
| 601.05 C. 1 | Prisoners: Handcuffing of Prisoners | | |
| 601.06 A. | Prisoners: Searching of Prisoners | | |
| 601.07 C. | Prisoners: Security of Prisoners – Escape Prevention | | |
| 601.07 D. | Prisoners: Security of Prisoners – Escape Prevention | | |
| 601.14 A. 2. | Prisoners: Injured/Sick Prisoners | | |
| 604.10 A. | Family Disturbance/Violence: Family/Dating Violence/Disturbance | | |
| 606.14 A. 3. | Impounding Property: Releasing Property | | |
| 606.14 D. | Impounding Property: Releasing Property | | |
| 607.06 C. 3. | Impounding Vehicles: Officers' Responsibilities | | |
| 607.15 A. | Inventory and Disposition of Property Inventoried | | |
| 609.05 B. 1. | Emergency Vehicle Operation | | |
| 610.05 B. | Missing persons: Reporting | | |



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
*Procedure 303 – Disciplinary Procedures*



| LINE COMPLAINTS | FORMAL COMPLAINTS |
|---|---|
| **Suspensions – 3 Days or Less** | **Suspensions – More than 3 Days** |
| **Investigated via Chain of Command to Captains** | **Investigated via Internal Affairs to CAAB** |
| *Line complaints generally constitute disciplinary matters limited to and involving a minor variance from the routine activities and responsibilities of the sworn member.* | *Formal complaints generally constitute matters involving conduct that exhibits a significant variance from behavioral expectations. Formal complaints include, but are not limited to:*<br><br>○  *Significant behavioral infractions;*<br><br>○  *Potential to require a suspension beyond 3 days;*<br><br>○  *All allegations of unnecessary force; or*<br><br>○  *Any other incident that may require formal disciplinary proceedings in order to be properly resolved.* |

*These are General Guidelines only – Disciplinary Actions may vary based on actual circumstances*
**Captains should consult with a Deputy Chief, where any indications of questionable issues arise.**

| PROCEDURES | | PROCEDURES | |
|---|---|---|---|
| **Section** | **Title** | **Section** | **Title** |
| 610.06 | Missing persons: Entering Missing Person Information in the Computer | | |
| 618.08 A. | Racial/Bias Profiling: Data Collection | | |
| 701.06 A. | Crime Scene Duties: Officers' General Crime Scene Duties | | |
| 707.08 B. 2. | Accident Investigation: Officer Responsibility | | |
| 802.05 | Critical Incidents: Initial Responders | | |
| 803.06 A. | Bomb Threats: Found Explosive Devices | | |
| 905.05 A. 3. | Off-Duty and Outside Employment: Outside Employment – Discussion | | |
| 905.05 C. 2. | Off-Duty and Outside Employment: Outside Employment – Eligibility | | |
| 905.05 D 4. | Off-Duty and Outside Employment: Outside Employment – Employment Permit | | |
| 905.05 D 6. | Outside Employment: Employment Permit | | |
| 905.05 E. 2.c | Off-Duty and Outside Employment: Acceptable Forms | | |
| 917.04 C. 1. | Fiesta Events Attendance Requirements | | |
| 917.04 D. 1. | Fiesta Events Attendance Requirements – Cancellations | | |
| 917.06 C. | Fiesta Events Attendance Requirements – Special Events | | |
| 917.06 C. 2. | Fiesta Events Attendance Requirements – Special Events | | |

 

## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Procedure 403 – Communications*

| | | | |
|---|---|---|---|
| Office with Primary Responsibility: | SSO | Effective Date: Prior Revision Date: | June 01, 2012 August 26, 2011 |
| Office(s) with Secondary Responsibilities: | PSC, PNC, TSC, FTC, IDC | Number of Pages: | 12 |
| Forms Referenced in Procedure: | SAPD Form #116 | Related Procedures: | 303, 307 |

### .01  INTRODUCTION

This procedure identifies the necessary components and responsibilities of the communications process which are essential for maintaining the high quality of service provided by the Department.

### .02  DISCUSSION

A.  The various elements of communications constitute essential links in the coordination and delivery of police services. Citizens' expectations of the Department include prompt response to the wide variety of calls received. A clear and effective communications process must be followed to ensure efficient field operations and continued confidence of the community.

B.  The Communications Unit's role is the focal point of this process. Consequently, the Communications Unit, as authorized by the Chief of Police, has the authority to direct field units.

### .03  CLASSIFICATION OF CALLS

A.  A Code-One Call is a request for police services which does not present an actual and immediate potential for serious injury, damage or loss of property. A code-one call generally requires only a routine police response.

B.  A Code-Two Emergency Call means a request for police service where the immediate rapid response or arrival of police units will reduce the probability of serious injury, damage or loss of property. Common code-two responses include assaults in progress and burglars in action. Some other examples include, but are not limited to, the following:

   1.  A police officer or security guard needs assistance with the arrest of offensive persons, crowd control, or imminently violent disturbances;

   2.  Felonies in progress where the actor has fled and may be in such proximity that a rapid police response may result in arrest or identification of the actor;

   3.  Gang fights or fights where dangerous weapons are being used;

   4.  Fires where the Fire Department has not yet arrived; and

   5.  Situations in which an officer may render aid prior to the arrival of medical assistance.

C.  A Code-Three Emergency Call is a request for police service which presents an actual and verified threat of immediate danger of death or serious bodily injury to a peace officer or any person. The threat must be an immediate threat and the assistance needed must be immediate. A code-three emergency call is usually prompted by any of the following requests for assistance:

   1.  A police officer needs help and all instances in which the safety of an officer is directly threatened or immediate assistance is required. For example:

      a.  A police officer is in trouble, being assaulted, or involved in a shooting; or




**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Procedure 403 – Communications*

    b.   A police officer encounters a robbery, burglary, or any other crime in progress in which the officer's intervention might be met with violent resistance.

  2.   Any person under imminent threat of death or serious bodily injury that the officer responding to may be able to prevent, including:

    a.   Crimes in progress, when the actor is still present, such as shootings, cuttings, robberies, sexual assaults; and

    b.   Serious situations where human life is in peril and the police have a primary responsibility.

  3.   Major disasters (i.e., floods, aircraft crashes, and other natural or manmade disasters).

**.04   CALL ASSIGNMENT**

A.   The Department has a responsibility to respond with a degree of promptness appropriate to the situation.  While the priority spectrum and degree of urgency is wide, each call is extremely important to the individual placing it.  For this reason, dispatchers are not restricted to district or section boundaries, or even rank (under exceptional circumstances) when assigning calls.

B.   A call, including a cover call, is assigned to uniformed personnel under a dual concept, which is:

  1.   Calls are held in accordance with GM Procedure 402, *Differential Police Response*; and

  2.   Assigning the officer who is available for service (normally the officer nearest the location) provides the most prompt response.

C.   The call is dispatched to an officer/UEDI in the following order, if practical:

  1.   Officer/UEDI assigned to the district (or section, in the case of a Crime Scene Unit Investigator) where the call is located;

  2.   Officer/UEDI completing a call in the district (or section, in the case of a Crime Scene Unit Investigator) where the call is located;

  3.   Officer/UEDI assigned to an adjacent or nearest district (or section, in the case of a Crime Scene Unit Investigator) to the location where the call is located; and

  4.   Officer of any rank, available for service, who may be in close proximity to the call.

D.   A cover officer(s) is dispatched to any situation that presents a potential for physical threat to the officer responding.

  1.   Assignment of a cover call is at the discretion of the dispatcher, although an officer with primary report responsibility may elect to request cover based on direct knowledge of the situation.

  2.   Once a cover officer has been dispatched to a call involving weapons, multiple actors, or a crime in progress, the cover officer will not be canceled until the first officer arrives at the scene and assesses the situation.

  3.   An officer, not on assignment, who is in close proximity to a call which requires a cover officer, may elect to respond, although he will remain available for service unless authorized and marked out by the dispatcher.

E.   An officer arriving at the scene of a call prior to the officer with assigned report responsibility shall request the dispatcher's permission to handle the call.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 403 – Communications*



F.  An officer encountering an on-site call prior to its dispatch is expected to handle it, except at the dispatcher's discretion when the officer is on another assignment.

G.  An officer/UEDI or Crime Scene Investigator is subject to cancellation from a call or assignment by the dispatcher and placed back in service under the following conditions:

1.  When information is received eliminating the need for further response;

2.  A supervisor determines the officer is not needed; or

3.  A complainant refuses police services (i.e., fingerprinting stolen vehicles or burglary scenes).

H.  A call involving potential or reported threats of violence is not canceled under any circumstance.

I.  Investigative personnel are sent when required by established procedure or requested by field personnel. Dispatchers will not wait for confirmation from the responding officer/UEDI before dispatching a Crime Scene Unit Investigator to a reported shooting or cutting.

J.  A supervisor is sent when required by established procedure or requested by field personnel.

K.  The Communications Unit supervisor is notified when a call to a major incident is dispatched, or any other call requiring a number of officers to respond. For example:

1.  Officers in trouble;

2.  Pursuits;

3.  Large disturbances; and

L.  The Communications Unit supervisor shall monitor major incidents (examples listed above), coordinate the allocation of uniform resources with the uniform supervisor, and maintain effective uniform strength. The Communications Unit supervisor will prepare and forward an all-route electronic advisory as necessary.

## .05  RADIO TRANSMISSIONS

A.  Radio traffic congestion not only reduces the efficiency of uniform units but compromises officer safety. It is the responsibility of each participant in the communications process to minimize radio traffic congestion to the greatest extent possible.

B.  Federal Communications Commission regulations prohibit any form of superfluous, indecent, or unauthorized radio communications.

C.  All voice and data transmissions conducted on any police frequency shall be directly related to police business. Personal messages of an emergency nature may be relayed with the authorization of a supervisor.

D.  All voice and computer transactions over police channels are recorded or logged primarily for the purpose of legal documentation and are available for review by supervisory personnel.

E.  Officers below the rank of sergeant are not authorized to initiate direct communication between uniform units on a primary frequency, unless the following criteria are met.

1.  The transaction must be incidental to an emergency in progress; or

2.  The dispatcher's permission must be secured prior to transmitting.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 403 – Communications*



F.   Officers may use open channels or computers as a police communications link between uniform elements.

G.   Emergency communications supersede all other forms of radio communications.

H.   Dispatchers suspend radio transmissions on all channels before broadcasting any emergency information.

I.   Code-One Call Transmission Sequence

   1.   The dispatcher calls the entire call number of both the officer and cover officer, if applicable, dispatches the call, and waits a reasonable time for response.

   2.   The officer answers promptly with full call number and acknowledges the call.

      a.   The officer checks his computer for dispatch information.

   3.   The dispatcher gives the officer concise details about the call, repeating any numbers in the address twice. (Cross street information is given only for code-two or code-three emergency calls);

      a.   The dispatcher asks the officer if he understood the call which should be registering on the computer and if he requires any further information.

   4.   The officer acknowledges receipt of the call by responding with his entire call number and will state in clear language "I copy - enroute";

   5.   Officers will identify using full call sign and state in clear language "on-scene" upon arrival at the scene and will identify using full call sign and state in clear language "in-service" upon completing the call.

J.   Code-Two Emergency Call Transmission Sequence

   1.   A code-two emergency call, normally preceded by an emergency alert tone, is broadcast over the affected primary channel(s) at the dispatcher's discretion. Information concerning the code-two emergency call is broadcast over each working channel at the individual dispatcher's discretion;

   2.   The dispatcher calls the entire call number of the officer to be assigned report responsibility and the cover officer (if applicable), and gives concise details about the call, repeating any numbers in the address twice and giving any cross street information.  The dispatcher shall verbally specify the call is to be run "code-two."

   3.   The officer acknowledges receipt of the call by responding with his entire call number and state in clear language "I copy – enroute – code-2";

   4.   A supervisory officer is notified;

   5.   Officers will identify using full call sign and state in clear language "on-scene" upon arrival at scene; and

   6.   All routine or non-emergency radio transmissions are suspended from the time of the first unit's arrival until initial radio transmission is received from the scene;

K.   Code-Three Emergency Call Transmission Sequence

   1.   A code-three emergency call, preceded by an emergency alert tone, is immediately broadcast simultaneously over all primary police frequencies upon reception by the dispatcher.

   2.   The dispatcher calls the entire call number of the officer to be assigned report responsibility and the cover office, if applicable, and gives concise details about the call, repeating any numbers in the address twice and giving any cross street information.  The dispatcher shall verbally specify the call is to be run "code-three."



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 403 – Communications*



3. The officer acknowledges receipt of the call by responding with his entire call number and in clear language " I copy – enroute – code-3";

4. A supervisory officer is notified to make the scene;

5. All radio communications not directly related to the emergency call are suspended until information is received from the first unit arriving at the scene; and

6. Officers will identify using full call sign and state in clear language "on-scene" upon arrival at scene; and

7. The first officer arriving on the scene will advise the dispatcher and give preliminary details regarding the call;

8. All non-emergency radio communications are suspended until the situation at the scene is stabilized.

L. Dispatchers will only use clear language when upgrading / downgrading the response level of any call via an on-air announcement of "now code-one" or "now code-two" or "now code-three."

## .06  FAILURE TO RESPOND

A. The failure of an officer to verbally respond after two (2) successive calls from the dispatcher initiates the following process:

1. The dispatcher time-stamps and completes SAPD Form #116, *Failure to Respond Form*, and notifies the Communications Unit supervisor;

2. The appropriate field supervisor is notified and assigned to attempt to locate the officer who failed to respond to the call from the dispatcher.  The field supervisor submits a written report under the original case number with a copy routed to the Unit Commander;

3. Another officer is dispatched to the call and given report responsibility;

4. An officer responding after another officer is assigned the call is sent to the location to cover and contact the supervisor assigned;

5. The Communications Unit supervisor signs SAPD Form #116 and forwards it to the Communications Unit Director; and

6. The Communications Unit Director reviews and signs SAPD Form #116 and forwards copies to the officer's division/section commander and unit/shift commander for further disposition.

B. If the field supervisor fails to respond after three (3) calls, the nearest available unit/shift commander is notified by the Communications Unit supervisor.  The nearest available officer is then assigned the call.

## .07  CHANNEL BROADCAST PROCEDURE

A. The following information is relayed to all dispatch consoles by a communications clerk for broadcast to all officers:

1. Police officer needing help;

2. Crimes in progress that may pose an immediate danger of death or serious bodily injury to officers responding or to any person;

3. Severe weather conditions; and

4. Any information essential to officers.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 403 – Communications*



B. The following information is relayed to selected dispatch consoles by a communications clerk for broadcast to officers:

    1. Emergency pursuit information of fleeing vehicles is broadcast on affected channels as the vehicle crosses channel divisions;

    2. Updating information or descriptions pertaining to felony offenses in progress or recently committed on selected channel(s);

    3. Newly received information concerning missing/wanted persons, stolen autos, and attempts to locate persons or vehicles; and

    4. Any other information essential to selected officers.

## .08 *INFORMATION CHANNEL PROCEDURES*

A. The Communications Unit operates an Information Channel on a twenty-four (24) hour basis to service the needs of all units.

B. The Information Channel provides the following services:

    1. Local, TCIC, and NCIC checks of the following provided the subject or item is in their custody, possession, presence, or immediate access. (A log is maintained for the purpose of validating and confirming "hits" within the system.)

        a. Persons (missing and wanted);

        b. Vehicles (land, water, and air); and

        c. Property (real or tangible).

    2. Validation of warrant checks (municipal, county, state, federal);

    3. Complainant callbacks prior to n-coding calls;

    4. Case number and assignment generation;

    5. Individual or company notifications (alarms, stranded motorists, etc.);

    6. Other department notifications (public works, law enforcement entities, dog pound, etc.);

    7. Directions to new locations or addresses not found in the street guide;

    8. Updates of severe weather reports;

    9. Canceling of stolen vehicles; and

    10. Other services appropriately intended to expedite the officer's handling of police matters.

## .09 *RESPONSIBILITIES*

A. Communications Unit

    1. Screens information relayed from Communication Unit call-taker to ensure field units receive concise, but sufficient information in order to make an appropriate response;



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 403 – Communications*



2. Exhibits demeanor which conveys an objective attitude of responsiveness and alertness at all times with immediate and decisive replies to each verbal transaction;

3. Ensures prompt disposition of all requests for service by properly utilizing the nearest available resource(s);

4. Provides information and assistance to field officers;

5. Adheres to proper radio procedures and decorum;

6. Maintains the availability of adequate personnel resources;

7. Avoids making any decisions pertaining to operational matters which are better resolved by field supervisors; and

8. The Communications Unit supervisor maintains a liaison with field supervisors in order to resolve problems and ensure discipline is maintained.

B. Uniform Personnel

1. Checks in service promptly after roll call and notifies the dispatcher of vehicle and radio number.

2. Continuously monitors assigned frequencies and promptly responds when called by the dispatcher throughout the tour of duty.

3. Acknowledges and accepts all calls without repetition or discussion;

   a. No officer will fail to respond unless relieved by command authority.

   b. Advises the dispatcher of any extenuating circumstances where response time may be reduced.

4. Requests directions to locations only if necessary on code-two or code-three calls.

5. Immediately advises the dispatcher upon encountering any circumstance which delays his response to, or cancellation from, calls and cover calls (i.e., traffic violators, suspect stops, etc.).

6. Returns to service immediately upon completion of call (this does not include the period needed to write report):

7. Advises the dispatcher of all status changes (i.e., enroute or call complete), when changing channels, or otherwise being unable to monitor the primary assigned frequency.  Officers will not be excused from monitoring the radio or availability for service during:

   a. The course of handling assigned calls;

   b. Requested food or drink breaks;

   c. Traffic or suspect stops; and

   d. Personal relief breaks.

8. Plans all transmissions to minimize channel congestion and avoids interrupting any communications unless under emergency circumstances; and

9. Excludes personal references, differences of opinions, or complaints over any police frequency. Complaints about dispatchers are handled through the chain of command.




**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Procedure 403 – Communications*

C.  Uniform Commander / Supervisor

1.  Monitors radio and computer traffic involving their respective channel to preserve proper radio decorum and ensure a high degree of efficiency regarding the functions and activities of their unit;

2.  Responds to and supervises the scene of all dispatched major incidents;

3.  Handles complaints on officers (on and off-duty) received from the dispatcher;

4.  Investigates when subordinates fail to respond to the dispatcher;

5.  Responds to scenes upon request of subordinates, when feasible; and

6.  Assists dispatchers in maintaining officers' availability for service.

**.10  PHONETIC ALPHABET**

The Standard Phonetic Alphabet, listed below, is utilized in spelling or using letters in messages:

| | | | | | |
|---|---|---|---|---|---|
| A – Alpha | F – Foxtrot | K – Kilo | P – Papa | U – Uniform | Z - Zulu |
| B – Bravo | G - Golf | L - Lima | Q – Quebec | V - Víctor | |
| C – Charlie | H – Hotel | M – Mike | R – Romeo | W - Whiskey | |
| D – Delta | I - India | N – November | S – Sierra | X - X-Ray | |
| E – Echo | J – Juliet | O - Oscar | T – Tango | Y - Yankee | |

**.11  RADIO TEN-SERIES CODES**

A.  In compliance with National Incident Management System (NIMS) and to be better able to communicate with other first responders, the use of Radio Ten Codes is limited to only twelve codes:

1.  10-4      Acknowledged;

2.  10 - 11   *Cover Officer Requested*;

3.  10 - 12   *Wanted Person / Active Stolen*;

4.  10 - 13   *Sex Offenses/Medical Concerns*;

5.  10 - 14   *Mentally Ill Person*;

6.  10 - 15   *Officer or Firefighter in Trouble*; and

7.  10 – 16   *Patient Expired*;

8.  10-21     15 Minute Break;

9.  10-22     30 Minute Break;

10.  10-40A  Subject Wanted on Felony Warrant;

11.  10-40B  Subject Wanted on Class A or B Misdemeanor Warrant; and

12.  10-40C  Subject Wanted on Class C Misdemeanor Warrant.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 403 – Communications*



**.12  RADIO CHANNEL ASSIGNMENTS**

A.   The following are permanent operational radio channel assignments. Asterisks (*) indicate dispatch channels:

| Section, Unit, Detail, or Function | Channel # |
|---|---|
| 1.   North Patrol Section | 1 – A * |
| 2.   West Patrol Section | 1 – C * |
| 3.   South Patrol Section | 1 – E * |
| 4.   Central Patrol Section, Downtown Bike Patrol Unit, Special Victims Unit, and Park Police | 1 – G * |
| 5.   East Patrol Section | 1 – I * |
| 6.   Northwest Patrol Section | 1 – K * |
| 7.   Information Channel | 1 – M |
| 8.   Tactical Response Unit | 1 – N * |
| 9.   Traffic Channel | 2 – A * |
| 10. Downtown Bike Patrol Unit | 2 – C |
| 11. Fleet Services | 2 – N |
| 12. Intelligence Unit | 3 – A |

| Section, Unit, Detail, or Function | Channel # |
|---|---|
| 13. Covert Operations Units | |
| a.   Vice | 3 – B |
| b.   Narcotics | 3 – C |
| 14. Crime Scene Unit | 3 - D |
| 15. Repeat Offenders Program | 3 - E * |
| 16. Special Operations Unit | 3 - G |
| 17. Homicide Unit | 3 - H |
| 18. Vehicle Crimes Unit | 3 - I |
| 19. Executive Protection | 3 - J |
| 20. Night Detectives Unit | 3 - K |



## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Procedure 403 – Communications*



| 21. | Asset Seizure Detail | 3 - M |
| 22. | Shooting Team | 3 - N |
| 23. | Internal Affairs | 3 - O |

B. Requests for temporary assignment of service channels for special functions or operations are made in writing to the Communications Unit Director. The requests include the reason(s) for requiring the channel, the date(s) and time(s) needed, and necessity of dispatch personnel.

## .13 OFF-DUTY COMMUNICATIONS BY OFFICERS

A. Each officer is responsible for all transmissions from his assigned radio.

B. Radio usage is limited to police business.

C. An off-duty officer working an extra job should check in/out with the dispatcher and monitor the channel serving the area of his location in the event of an emergency.

D. An off-duty officer transmitting on a police radio shall identify himself by using the identifier "Bravo" before his assigned badge number name (i.e., Bravo 123 Officer Smith, Bravo 2023 Detective-Investigator Smith, Bravo 3013 Sergeant Smith, etc.).

E. Transmissions over police frequencies by off-duty officers are limited to the following instances:

   1. Emergency situations where the officer needs assistance to prevent injury or loss of property are reported to the operational channel covering the area of the situation;

   2. Crimes in progress or major accidents are reported to the operational channel covering the area of the situation;

   3. Police service requests of a non-emergency nature are reported to the information channel only if a telephone is not available;

   4. Officers requesting prisoner transportation or case numbers may use the information channel frequency if a telephone is not available or its use would compromise the arrest or officer safety; and

   5. Information channel use is restricted to assistance with police related matters and hazardous situations that require an immediate response from a governmental agency (i.e., water main breaks, traffic hazards, utility problems, light malfunctions, etc.).

## .14 TELEPHONIC COMMUNICATION

A. Requests For Service

   1. Members receiving telephone requests for service:

      a. Obtain the nature of the request; and

      b. Determine if the request may be dealt with by the member receiving the call or another member present within the unit, or must be handled by a member of another unit or be dispatched to a field unit.

   2. If the request must be dealt with by a member of another unit, the member transfers the caller and announces the call to the appropriate unit.

3. If the request must be dispatched, the member transfers the caller and announces the call to the Communications Unit.

4. Members receiving telephonic complaints against another member comply with the process prescribed in Procedure 303, *Disciplinary Procedures*.

B. Requests For Information

1. Members receiving telephone requests for information may confer information in accordance with Procedure 307, *Public and Media Information.*

2. Any requests from outside the Department for release of information from departmental administrative or field files are referred to the Accounting and Personnel Office.

C. Long-Distance Communication

1. Members needing to make a long-distance telephone call in conjunction with their assigned duties place the call through the Communication Unit.

2. The Communication Unit maintains a complete log of all long-distance calls charged to the Department.

**.15** ***ACCEPTING / DELIVERING EMERGENCY MESSAGES***

A. Accepting and delivering emergency messages is a legitimate law enforcement function. Therefore, members of the Department shall adhere to the following criteria when accepting and delivering emergency messages.

B. Emergency messages include, but are not limited to the following types of messages:

1. Death messages (both local and out of area);

2. Serious illness or injury messages (both local and out of area);

3. Any other types of messages which, if not delivered in a timely manner, could have adverse effects on members of an immediate family.

C. Accepting Emergency Messages

1. All incoming messages of an emergency nature shall be transferred to the appropriate unit without delay.

2. If the unit is not open or the unit with follow-up responsibility for the emergency message cannot be determined, the emergency message will be transferred to the Communications Unit supervisor's office.

D. Delivering Emergency Messages

1. The Communications Unit supervisor shall determine the nature of the emergency messages and attempt to contact the unit or member with follow-up responsibility by telephone.

2. If the unit with follow-up responsibility cannot be determined, the Communications Unit will be the unit responsible for delivering emergency messages.

3. If the unit or member with follow-up responsibility can not be contacted, a patrol officer will be dispatched to deliver the emergency message.

4. The member delivering an emergency message shall attempt to deliver the message with the understanding the message may cause some mental anguish for the receiving party.



## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Procedure 403 – Communications*



    a.    If the emergency message has a telephone number or name of a party to contact, the member should just give the receiving party the telephone number and name of the party to contact for an emergency message.

    b.    If there is no one to receive the emergency message, the member attempting to deliver the message should leave a telephone number and name of a party to contact on a note in an easily seen location.

5.    When an emergency message must be delivered to a party out of the jurisdiction of the Department, the Communications Unit or the Security Desk will deliver the emergency message by teletype to the appropriate law enforcement agency.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 501 – Use of Force*



| Office with Primary Responsibility: | CTA | Effective Date: Prior Revision Date: | February 19, 2014 May 04, 2012 |
|---|---|---|---|
| Office(s) with Secondary Responsibilities: | PSC, PNC, TSC, FTC, IDC, SSO | Number of Pages: | 7 |
| Forms Referenced in Procedure: | SAPD Form #62-UOF SAPD Form #62 | Related Procedures: | 303, 309, 408, 512, 601, 605, 908 |

## .01  INTRODUCTION

The procedure provides officers with guidelines on the use of non-deadly and deadly force.  This procedure also explains the process officers shall follow for reporting use of force incidents.

## .02  POLICY

A.  The San Antonio Police Department requires its officers to exhibit a sense of prudent judgment derived from departmental training, acquired knowledge, skills, and ability in the exercise or application of any level of force.

B.  Officers shall use only the level of force necessary to accomplish a lawful police objective.  Any time force is used, the officer shall apply a level of force reasonable for the situation.

C.  The San Antonio Police Department requires all officers to document use of force incidents on SAPD Form #62-UOF, *Use of Force Report*, in accordance with this procedure.  The Department also requires supervisors to respond to the scene of use of force incidents and to review all *Use of Force Reports,* to ensure the application of force conforms to established guidelines and departmental policy and procedures.

## .03  DISCUSSION

A.  The sanctity of human life and individual liberties are immeasurable elements of modern society which vests police officers with the responsibility for the preservation and protection of its paramount values.  In the pursuit of this responsibility, officers maintain the understanding the protection of property and apprehension of criminal offenders is subservient to the protection of life, including their own.

B.  In the course of discharging their duty, police officers are often confronted with situations requiring some degree of force to be exercised in order to effectively maintain public order and safety.  This may be achieved on an ascending scale of the officer's presence, verbal communications, open/empty hands control, physical force, intermediate weapon and deadly force, according to and proportional with the circumstances of the situation.  The application of force must be conducted in a manner reasonable and commensurate to achieving a level of control that cannot otherwise be obtained through the use of other alternatives.

C.  Although the use of a reasonable amount of force is authorized in appropriate circumstances, such as those involving the protection of the officer or others from bodily harm, officers must be aware unnecessary or excessive force violates Federal Statues, the Texas Penal Code and departmental policy.

## .04  TERMINOLOGY *(For specific use within this procedure, see Glossary)*

| | | |
|---|---|---|
| Active Resistance | Anti Felon Identification (AFID) | Approved Weapon |
| Brandishing/Displaying Firearm | Deadly Force | Drive Stun Mode |
| Electronic Control Devices (ECD) | Force | Injury |
| Intermediate Weapon | Non-deadly Force | Officer's Presence |
| Oleoresin Capsicum (OC) | Open/Empty Hands Control | Passive Resistance |
| Physical Force | Probe Mode | Reasonable Force |
| Takedowns | Verbal Communications | Weapon |



## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Procedure 501 – Use of Force*



**.05  APPLICATION OF FORCE**

A.  With the exception of an officer's presence or verbal communications, the use of any type of force is not justified in response to verbal provocation alone.

B.  Police officers finding it necessary to use force to achieve a lawful police objective shall use a reasonable amount of force to affect the objective.  However, nothing in this procedure is interpreted to mean an officer must prolong any combat or struggle in order to satisfy any element of escalation rather than resort to a reasonable method that resolves the situation in the safest and most expedient fashion.

C.  The use of force by an officer can be viewed as a matrix of force options used in response to a subject's actions and behavior.  The force matrix illustrates the relationship between a subject's actions and the officer's response.  As force options move from lesser to greater levels, the risk of injury to the suspects and/or officers increase.  The matrix is designed to assist officers in understanding how force can escalate.

| OFFICER'S PERCEPTION OF SUSPECT'S ACTIONS | | | | | |
|---|---|---|---|---|---|
| | Compliant (Cooperative) | Passive Resistant | Active Resistant | Imminent Assault (Bodily Injury) | Imminent Serious Bodily Injury/Death |
| *Officer's Presence* | ✓ | ✓ | ✓ | ✓ | ✓ |
| *Verbal Communications* | ✓ | ✓ | ✓ | ✓ | ✓ |
| *Open/Empty Hands Control* | | ✓ | ✓ | ✓ | ✓ |
| *Physical Force* | | | ✓ | ✓ | ✓ |
| *Intermediate Weapon* | | | ✓ | ✓ | ✓ |
| *Deadly Force* | | | | | ✓ |

D.  An officer should consider the following factors when assessing the need to use force:

1.  Is the suspect submitting peacefully or resisting?

2.  Is the suspect armed?

3.  What is the nature of the crime?

4.  Does the suspect have a previous arrest record or history showing violence?

5.  Number of suspects involved?

6.  How much support from other officers is available?

E.  A weapon is not displayed or brandished as a threat unless its potential use in the situation would be reasonable, or if the circumstances clearly call for the use of a weapon to control a dangerous situation, or in accordance with Chapter 9 of the Texas Penal Code.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 501 – Use of Force*



## .06 *USE OF NON-DEADLY FORCE*

A. When attempting to affect an arrest, officers should use verbal communications prior to the use of non-deadly force, if possible.

B. If verbal communication has been exhausted or proven ineffective, officers are authorized to use open/empty hands control.

C. If an open/empty hands control has been exhausted or proven ineffective, officers are authorized to use physical force.

D. If physical force has proven ineffective or is not a reasonable option based upon the circumstances, officers are authorized to use an intermediate weapon to affect an arrest. Officers using intermediate weapons must be authorized to carry such weapons in accordance with GM Procedure 309, *Weapons*.

E. Officers may resort to the use of an approved intermediate weapon when:

   1. Lesser methods have failed;

   2. In self-defense or defense of a third person;

   3. Subduing or controlling a violent subject;

   4. Subduing an actively resisting actor; or

   5. Physical force has proven ineffective or is not a reasonable option based upon the circumstances.

F. Oleoresin Capsicum (OC) Spray/Gel and/or Electronic Control Device (ECD)

   1. Only officers who have successfully completed a training course and are certified in the use of OC spray/gel and/or an ECD are authorized to carry and use OC spray/gel and/ or ECD as an intermediate weapon. Additionally, only officers who have also successfully completed a 40 hour Crisis Intervention Training course are authorized to carry an ECD.

   2. Officers shall only carry and use department-issued OC spray/gel and/or ECDs.

   3. Officers shall carry the OC spray/gel and /or ECD in an authorized carrier.

   4. OC spray/gel and /or ECD shall not be brandished, displayed, or pointed at a subject in an intimidating manner unless an officer is attempting to prevent further escalation of force.

   5. Officers using OC Spray/Gel and/or ECD:

      a. Oleoresin Capsicum Spray/Gel

         (1) As with any other type of force, officers will end application of OC Spray/Gel when the subject discontinues resistance or aggression. OC Spray Spray/Gel is irritating to the eyes, nose, and skin. Any time OC Spray/Gel is used to control or subdue an actively resisting or violent subject, the officer will ensure the subject is decontaminated as soon as possible, to reduce the discomfort caused by the OC Spray/Gel. Decontamination consists of the application of water to the subject's eyes and face.

         (2) Decontaminate prisoners exposed to OC Spray/Gel before being transported to the Detention Center. Prisoners exposed to OC spray/gel, will be observed by an officer for 45 minutes to ensure the prisoner does not require medical attention. If in the officer's opinion, the prisoner appears to be in severe pain,



**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Procedure 501 – Use of Force*



discomfort, or exhibits unusual symptoms such as unconsciousness, profuse sweating, chest pain or slow, shallow breathing, the officer shall immediately request EMS to the scene.

    (3)  The decontamination process and amount of time the prisoner was observed will be documented in the officer's report and on the SAPD Form #62-UOF, *Use of Force Report*.

  b.  Electronic Control Devices (ECD) will be used in accordance with GM Procedure 512, *Electronic Control Devices*.

## .07   USE OF DEADLY FORCE

A.  This section applies to all forms of deadly force, regardless of the type of instrument or weapon used.

B.  The use of deadly force is authorized only to protect an officer or another person from what is reasonably believed to be an immediate threat of death or serious bodily injury.

    1.  An officer with an honest and sincere personal belief his life or the life of another person is in imminent danger is justified in using deadly force to preserve that life.

    2.  Justification for the use of deadly force is determined by the facts known or perceived by the officer at the time the deadly force is employed.

C.  The use of deadly force against one who is fleeing from custody, or who is fleeing immediately after committing an offense, is prohibited unless the officer has probable cause to believe the suspect poses an imminent threat of death or serious bodily injury to the officer or a third party.

D.  Approved firearms are intended to be used as defensive instruments to prevent an assailant from completing a potentially deadly act. A firearm is discharged with the intent to stop or incapacitate.

E.  Firearms are not discharged under the following circumstances:

    1.  As a warning shot;

    2.  When it appears likely a non-participant may be injured; or

    3.  At or from a moving vehicle, except as the ultimate measure of self-defense or defense of another. Officers should employ all reasonable means available to move to an area of safety if the vehicle becomes a threat, including retreating from the threat, if practical.

## .08   MEDICAL TREATMENT

A.  Prisoners, who are injured as a result of an officer's use of force, either physical, non-deadly, or deadly force, are provided immediate medical treatment in accordance with GM Procedure 601, *Prisoners*.

B.  Officers having prisoners who have been exposed to oleoresin capsicum (OC) Spray/Gel and/or ECD utilization, shall comply with Subsection .06 F of this procedure.

## .09   USE OF FORCE REPORT RESPONSIBILITIES

A.  Officers shall complete SAPD Form #62-UOF, *Use of Force Report*, under the following circumstances:

    1.  Any force used by an officer greater than an open/empty hands control technique, as listed in Subsection .05C;

 

**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Procedure 501 – Use of Force*

2. Any force used by an officer which causes an individual to impact the ground/floor (e.g. a push, leg sweep, hip throw, etc.). This does not include those situations where a suspect is directed and voluntarily goes to their knees or assumes a prone position on the floor, prior to being handcuffed;

3. Any force used by an officer that causes injury to an individual, which requires medical treatment;

4. Any force used by an officer that causes death to an individual;

5. Discharging a firearm at an individual to accomplish a lawful police objective;

6. The use of an intermediate weapon by an officer; and

7. When a police canine bites an individual.

B. When a prisoner offers resistance during an arrest and the officer does not use more than an open/empty hands control, the officer will check the appropriate box on the booking slip. The information gathered on the suspect's resistance will be used for statistical purposes.

C. Although an officer's presence, verbal communication, open/empty hands control techniques, or the brandishing or displaying of a weapon does not require the completion of SAPD Form #62-UOF, *Use of Force Report*, the details must be documented in the officer's report.

D. The discharging of a firearm in order to destroy an animal, in accordance with GM Procedure 605, Subsection .02F, does not require the completion of SAPD Form #62-UOF.

## .10 OFFICER RESPONSIBILITIES

A. Each officer using force during an incident which requires them to complete SAPD Form #62-UOF, *Use of Force Report*, in accordance with Section .09 of this procedure shall:

1. Notify the supervisor of the type of force used and whether the prisoner received any type of injury as a result of the use of force.

2. Request the supervisor to respond to the scene.

   a. An officer may relocate the prisoner prior to the arrival of a supervisor due to a threat of violence or exigent circumstances.

   b. If an officer does relocate from the scene, he shall notify the dispatcher and the responding supervisor.

3. Complete SAPD Form #62-UOF, *Use of Force Report*, documenting the specific type of force the officer used.

4. Complete a detailed, accurate offense/incident report describing the force used and the circumstances and facts surrounding the use of force.

5. Complete SAPD Form #62, *Injured Prisoners Report*, for those injured prisoners who receive medical treatment at a hospital.

6. Attach a copy of the offense/incident report to the completed SAPD Form #62-UOF, *Use of Force Report* as well as the SAPD Form #62, *Injured Prisoners Report* and give it to the supervisory officer who was notified of the use of force incident.

B. The SAPD Form #62-UOF, *Use of Force Report* shall be completed before the officer ends his tour of duty.



### SAN ANTONIO POLICE DEPARTMENT
#### GENERAL MANUAL
*Procedure 501 – Use of Force*



**.11  SUPERVISORS' RESPONSIBILITIES**

A. Supervisory officers who are notified of a use of force incident, which requires a SAPD Form #62-UOF, *Use of Force Report* in accordance with Section .09 of this procedure shall:

   1. Respond to the scene;

   2. Contact the officer(s) involved in the use of force; and

   3. Request a UEDI to photograph the person who had the force used against them. If a UEDI is unavailable a Crime Scene Unit Investigator shall be requested.  In their absence, the responding supervisor will take the photos.

      a. The photographs shall include photos of any documented, visible or alleged injuries.

      b. The photographs shall take place as soon as practical after the incident.

      c. The photographs will be handled in accordance with GM Procedure 408, *Digital Photography*.

B. If a supervisor from the section is not available to respond to the scene of a use of force incident the dispatcher will send any available supervisor.

C. The supervisor shall evaluate the circumstances surrounding the use of force incident and:

   1. Interview the prisoner, when available;

   2. Determine and ensure the use of force incident meets the criteria, which requires completion of the *Use of Force Report*;

   3. Determine if departmental policies and procedures were followed;

   4. Ensure proper medical treatment has been offered to the prisoner, and if oleoresin capsicum (OC) spray/gel was used, the decontamination process is conducted;

   5. When an ECD has been utilized and the subject received an electrical charge, the supervisor relieves the officer of his ECD. The sergeant downloads the ECD's internal information onto the ECD computer tracking system. Afterward, the supervisor returns the ECD to the officer as soon as possible.  The sergeant also issues the officer replacement cartridges when applicable;

   6. Ensure all officers who use force, in accordance with Subsection .09A during the incident, complete SAPD Form #62-UOF, *Use of Force Report*.

D. Procedural violations identified by the supervisor will be handled in accordance with GM Procedure 303, *Disciplinary Procedures*.  Supervisors shall route line complaint disposition reports or formal preliminary complaint investigation packets through the chain of command.

E. If the officer(s) is unable to complete the SAPD Form #62-UOF, *Use of Force Report*, the supervisor shall prepare the report based on available information.

F. The supervisory officer receiving SAPD Form #62-UOF, *Use of Force Report,* shall complete the appropriate section of the report and route the original report to the Internal Affairs Unit.



**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Procedure 501 – Use of Force*



G.   Supervisors not responding to any use of force incident, as outlined in Subsection .11A of this procedure, shall document in a report the reason he did not respond.  This report will be forwarded to his division commander through the chain of command.

## .12   POST EVENT PROCEDURES

A.   SAPD Form #62-UOF, *Use of Force Report,* shall be reviewed by a supervisor assigned to the Internal Affairs Unit to ensure:

1.   The type of force documented meets the criteria required for the completion of SAPD Form #62-UOF, *Use of Force Report*;

2.   Whether departmental policies and procedures were followed;

3.   The SAPD Form #62-UOF, *Use of Force Report,* is completed properly and is entered into the Use of Force database.

B.   If the Internal Affairs Unit Supervisor determines the incident documented on SAPD Form #62-UOF, *Use of Force Report,* does not meet the criteria for the completion of the SAPD Form #62-UOF, or requires corrections, the Internal Affairs Unit Supervisor shall retain a copy of the SAPD Form #62-UOF and return the original, through the chain of command, to the supervisor who completed the report.

C.   The field supervisor receiving a SAPD Form #62-UOF for clarification of details or corrections shall complete the *Use of Force Clarification Form* and return the form to their Division Commander who will forward the report to the Internal Affairs Unit.

D.   The Internal Affairs Unit Supervisor will review the *Use of Force Clarification Form* and determine if the incident meets the criteria for completion of a SAPD Form #62-UOF, *Use of Force Report*.  The *Use of Force Report* is either accepted and entered into the Use of Force database, or is rejected and filed in the Internal Affairs Unit as a rejected *Use of Force Report*.

E.   Officers involved in the use of deadly force shall be placed on administrative duty or administrative leave in accordance with GM Procedure 908, *Mandatory Reassignment*.

## .13   USE OF FORCE ANALYSIS

A.   The *Use of Force Reports* will be analyzed annually by the Internal Affairs Unit and the data will be used to prepare the *Formal Cases and Line Complaints Report* for the Chief of Police.

B.   An analysis of vehicle pursuits will be completed in accordance with GM Procedure 609, *Emergency Vehicle Operations*.




## SAN ANTONIO POLICE DEPARTMENT
### GENERAL MANUAL
*Procedure 502 – Warrantless Arrests, Searches, and Seizures*

| Office with Primary Responsibility: | CTA | Effective Date: Prior Revision Date: | July 31, 2010 October 01, 2009 |
|---|---|---|---|
| Office(s) with Secondary Responsibilities: | PSC, PNC, TSC, FTC, IDC, SSO | Number of Pages: | 6 |
| Forms Referenced in Procedure: | SAPD Form #29 SAPD Form #66E SAPD Form #2091-A | Related Procedures: | 607 |

### .01 INTRODUCTION

These guidelines are designed to assist officers of the San Antonio Police Department in determining how and when it is appropriate to enforce the law through warrantless arrests, searches, and seizures.

### .02 TERMINOLOGY (For specific use within this procedure, see Glossary)

Arrest          Exigent Circumstances          Probable Cause          Reasonable Suspicion          Search

### .03 POLICY

A. The authority to arrest without a warrant is entirely statutory. An officer's good faith does not justify an invalid arrest. Any officer who acts outside his authority in making a warrantless arrest may be subject to both civil and criminal liability.

B. An officer makes a warrantless arrest only if he has enough personal knowledge or reliable information to constitute probable cause upon which an arrest warrant could be issued, if time permitted.

C. Officers exercise discretion in the use of their authority to arrest without a warrant.

D. Officers make warrantless arrests only by the authorities listed in Section .04 of this procedure.

E. Officers make warrantless searches and seizures only by the authorities listed in Section .09 of this procedure.

### .04 WARRANTLESS ARREST AUTHORITIES

A. State Statutes

    1. Alcohol Beverage Code

        a. Chapter 101, Article 101.02          *Any Violation of Alcohol Beverage Code*

    2. Code of Criminal Procedure

        a. Chapter 8, Article 8.04          *Dispersing Riot*

        b. Chapter 14

            (1) Article 14.01          *Offense within View*

            (2) Article 14.02          *Within View of Magistrate*

            (3) Article 14.03(a)(1)          *Suspicious Places and Circumstances;*

            (4) Article 14.03(a)(2)          *Assault - Bodily Injury;*

            (5) Article 14.03(a)(3)          *Violation of Protective Order -  May Arrest;*

            (6) Article 14.03(a)(4)          *Family Violence - Bodily Injury;*



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 502 – Warrantless Arrests, Searches, and Seizures*



| | | |
|---|---|---|
| (7) | Article 14.03(a)(5) | *Interference with an emergency call; and* |
| (8) | Article 14.03(a)(6) | *Confession of a felony.* |
| (9) | Article 14.03(b) | *Violation of Protective Order - Shall Arrest.* |
| (10) | Article 14.04 | *Fleeing Felon* |

   c.   Chapter 18, Article 18.16   *Preventing Consequences of Theft*

   d.   Chapter 51, Article 51.13   *Uniform Criminal Extradition Act*

3. Health and Safety Code

   a.   Chapter 462, Section 462.041   *Chemically Dependent Person*

4. Parks and Wildlife Code

   a.   Chapter 11, Article 11.0191   *Any Violation of Parks and Wildlife Code*

5. Transportation Code

   a.   Chapter 543, Section 543.001   *Any Violation of Transportation Code*

B. Rights of Officers

1. Where an arrest may be lawfully made without a warrant, an officer making an arrest is justified in adopting all the measures which he might adopt in cases of an arrest under a warrant, except the officer making the arrest without a warrant may not enter a residence to make the arrest unless.

   a.   A person who resides in the residence consents to the entry; or

   b.   Exigent circumstances require the officer making the arrest enter the residence without the consent of a resident or without a warrant.

## .05  PROBABLE CAUSE

A. Probable cause to arrest exists when an officer has reason to believe, through personal knowledge or reliable information; a person has committed an offense.

B. To establish probable cause, the officer does not need the amount of evidence required to prove beyond a reasonable doubt a person is guilty of committing an offense.  Only that amount of evidence which reasonably shows a particular person probably or most likely committed an offense is required.

C. An officer may consider all the lawfully acquired information available to him at the moment of the arrest regardless of its admissibility at a trial.

D. Though an officer may not rely solely on reasonable suspicion to justify an arrest, he may use this factor as an initial step in establishing probable cause.

E. When immediate action is required, an officer may make an arrest even though he is unable to determine the particular offense which has been committed.  There may be a difference in the reason for arrest and the charge to be filed.  An officer is not required to know all the legal matters involved in determining with which offenses the offender is to be charged.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
*Procedure 502 – Warrantless Arrests, Searches, and Seizures*



F.  An officer, making an arrest at the request of another officer is entitled to rely on radio broadcast information and assume the officer requesting the arrest has probable cause for the arrest.  When one officer makes an arrest at the request of another officer, its validity is determined by whether the information known to the requesting officer is sufficient to establish probable cause.

G.  When information from an informant is necessary to establish probable cause, an officer:

   1.  Explains his reason(s) for believing the informant to be reliable and the underlying circumstances from which the informant concluded the offense was committed, and a particular person committed the offense.

   2.  An officer seeks some confirmation of the information he receives from a victim or witness:

       a.  An officer determines the victim or witness was able to observe and remember what happened;

       b.  Directly observable results of an offense can serve as partial confirmation of the commission of the offense; and

       c.  When the circumstances suggest the victim's or witness' allegations may be untrue, an officer investigates further before making an arrest.  The more doubt an officer has about the victim's or witness' veracity, sincerity, or ability to perceive, the more he needs to confirm the information.

## .06  SELECTIVE ENFORCEMENT

A.  Under certain circumstances in misdemeanor cases, for good cause consistent with public interest, an officer may decide not to arrest even though probable cause exists.  Factors which the officer may properly consider in determining not to arrest are as follows.

   1.  The victim must positively state he is not interested in prosecuting the offender because:

       a.  He desires restitution only;

       b.  He is in a continuing relationship with the offender (i.e., employer-employee);

       c.  He is in a family-type relationship with the offender; or

       d.  The actual injury done to persons or damage done to property is minimal.

   2.  The offender can be released to the custody of another agency which specializes in handling the type of case in which he is involved (i.e., Armed Forces Police).

   3.  The arrest would result in greater harm to the victim than would non-arrest.

B.  When the offense is a felony and circumstances outlined in Subsection .06A of this procedure exist, the officer has the victim and the offender accompany him to Headquarters to contact the investigative unit normally assigned to investigate the particular offense. *(Note: If this occurs from 1900 - 0500 hours, the Night CID Unit is contacted.)* The investigative unit supervisor determines whether the offender is booked or released.  If the offender is released, SAPD Form #29, *Complaint Waiver*, is signed by the victim and approved by the investigative unit supervisor.

## .07  DELAY IN MAKING AN ARREST

A.  An officer may, in order to avoid the use of force, delay making an arrest until a more appropriate time if by so doing he does not jeopardize the eventual arrest.

B.  An officer obtains a warrant if a misdemeanor is committed in his presence or view and he does not arrest at the time the offense is committed.



**SAN ANTONIO POLICE DEPARTMENT**
**GENERAL MANUAL**

*Procedure 502 – Warrantless Arrests, Searches, and Seizures*



C.  An officer obtains a warrant if a felony is committed in his presence or view and he does not arrest the offender as quickly as is reasonably possible under the circumstances.  Delay is reasonable when it avoids the necessity of overcoming resistance by the offender and when it is necessary for the safety of the officer or others.

D.  An officer who has reasonable time and opportunity to obtain an arrest warrant should always do so in accordance with GM Procedure 503, *Obtaining and Executing Arrest Warrants*.

E.  An officer obtains an arrest warrant when the offender is committing a continuing offense and the facts establishing probable cause are known to the officer over a period of time.  In all cases where an officer has knowledge of a continuing offense, a warrant of arrest is obtained.

F.  An officer obtains a warrant for a felony or breach of the peace committed out of his presence or view whenever he has reasonable time and opportunity to procure one.  Such action is unnecessary when obtaining a warrant would result in:

　　1.  The loss or destruction of evidence;

　　2.  The escape of the offender; or

　　3.  Bodily injury to the officer or others.

**.08  INFORMING PERSONS TO BE ARRESTED**

A.  Officers shall, under normal circumstances, inform persons about to be arrested of the following:

　　1.  The officer's intention to take the person into custody;

　　2.  The reason for the arrest;

　　3.  The authority for the arrest; and

　　4.  The person's rights as per the Miranda Warning.

B.  When an arrest situation makes it impractical to inform a person of an impending arrest, officers are not required to provide arrest information.  Situations where it would be impractical or unnecessary to provide arrest information include:

　　1.  When the person is in the act of committing the offense;

　　2.  When the person is fleeing from the scene of the crime;

　　3.  When the officer or others would be endangered; or

　　4.  When the arrest would be imperiled.

C.  When not in uniform, an officer displays his identification and identifies himself as a police officer as soon as the situation permits.

D.  Officers read SAPD Form #66-E, *Rights Warnings*, to offenders taken into custody, including juveniles,  prior to questioning regarding the offense for which they are arrested and in accordance with Chapter 38.22 of the *Texas Code of Criminal Procedure*.

E.  Officers take all persons arrested before a magistrate in compliance with Chapter 15, Articles 15.17 and 15.18, of the *Texas Code of Criminal Procedure*.

 

**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Procedure 502 – Warrantless Arrests, Searches, and Seizures*

**.09  WARRANTLESS SEARCH AUTHORITIES/GUIDELINES**

A.  Search by Consent

    1.  A consent search is a warrantless search and occurs when a person voluntarily allows a peace officer to search his body, premises, or belongings.

    2.  Consent is not voluntary if it is obtained by threat, force, or by falsely claiming the search can be conducted without consent.

    3.  Upon giving consent to search, the consenting person relinquishes any right to object to the search on constitutional grounds.

    4.  Officers, prior to conducting a search by consent, will complete and have the consenting person sign SAPD Form #2091-A, *Consent for Search of Private Premises*.

B.  Frisk

    1.  An officer may frisk a person for weapons at any time without a warrant if the officer has reason to fear for his safety.

    2.  The officer must be able to explain why the person was frisked.  The officer need not point to any one thing that would justify the frisk, but should refer to several things, each of which, when taken alone may seem harmless, but when considered together by an officer who is trained or experienced in dealing with criminal suspects, raises a reasonable suspicion the person poses a threat to the officer's safety.

C.  Search of a Vehicle Under a Movable Vehicle Exception

    1.  A vehicle stopped on public property by a peace officer may be searched without a warrant if the peace officer has probable cause to believe the vehicle contains items subject to seizure.

    2.  The items subject to seizure must be items connected with criminal activity.

    3.  The officer's determination of probable cause must be based on objective facts that could justify the issuance of a search warrant by a judge or magistrate.

D.  Crime Scene Search

    1.  While at a crime scene, officers may seize any evidence, fruits of the crime, or contraband that falls within the scope of the Plain View Doctrine.

    2.  Officers may conduct a quick and limited "protective sweep" search for the safety of officers and persons in the area.

      a.  The protective sweep search may be made when an officer reasonably believes the area harbors an individual posing a danger to those at the scene.

      b.  Officers may conduct a limited frisk search of a person for weapons at a crime scene if there are articulable facts indicating a person may be armed.

      c.  Officers may also make a limited search of persons at a crime scene if there are articulable facts a person may be about to destroy evidence.

    3.  In the absence of the Plain View Doctrine or exigent circumstances, officers shall obtain a warrant to search a crime scene.



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
*Procedure 502 – Warrantless Arrests, Searches, and Seizures*



4.  A search warrant is not necessary if a crime scene is located in a public place.

E.  Exigent Circumstances - Where the Public Safety is Endangered

1.  If exigent circumstances exist, the search warrant requirement is dispensed.

2.  Under exigent circumstances officers may search persons, property, or containers they believe possess or contain some immediately dangerous weapon or instrument.

3.  In situations where the public is in danger, officers may conduct a search of persons, places, or things without a warrant if there would not be a reasonable amount of time to obtain a warrant.

F.  Inventory Searches

1.  An inventory search of an impounded or seized vehicle may be conducted without a warrant in accordance with GM Procedure 607, *Impounding Vehicles*.  The inventory search is an administrative procedure intended to inventory and secures the contents in a vehicle.  The inventory procedure is intended to protect the following:

   a.  The owner's property while it remains in police custody;

   b.  The police against claims or disputes over lost, stolen, or vandalized property; and

   c.  The police and others from potential danger.

2.  If criminal evidence, contraband, or other property subject to seizure is discovered during the inventory of a vehicle, there must be a valid administrative reason for the inventory for the property to be admissible in court.

G.  Other Search Situations Authorized by Constitutional Provisions

1.  Any property or items listed in the Texas Code of Criminal Procedure, Article 18.02, that could be seized with a search warrant may be seized without a search warrant under the Plain View Doctrine if an officer:

   a.  Recognizes the property or items as seizable property or items;

   b.  Has a legal right to be in a position to view the property or items; and

   c.  Does not intrude on any person's reasonable expectation of privacy to seize the property or items.

2.  If the property or items are in a place the officer cannot legally enter without a warrant or consent, the property or items cannot be seized without a warrant unless there is danger of imminent destruction or removal of the property.




# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 508 – Field Contacts*

| | | | |
|---|---|---|---|
| Office with Primary Responsibility: | CTA | Effective Date: Prior Revision Date: | July 31, 2010 October 01, 2009 |
| Office(s) with Secondary Responsibilities: | PSC, PNC, TSC, FTC, IDC, SSO | Number of Pages: | 3 |
| Forms Referenced in Procedure: | SAPD Form #2-3 | Related Procedures: | None |

### .01  INTRODUCTION

A.  This procedure is designed to assist officers in determining how and when it is appropriate to stop persons for interviews and interrogations, and when it is appropriate to conduct a frisk.

B.  Officers are reminded they must exercise discretion in the use of their authority to field contact, stop, interview, interrogate, and frisk a person.

### .02  TERMINOLOGY (For specific use within this procedure, see Glossary)

| | | | | | |
|---|---|---|---|---|---|
| Access Area | Armed | Field Contact | Contraband | Frisk | Interrogation |
| Interview | Outer Clothing | Reasonable Suspicion | Search | Stop | Stop and Frisk |
| Suspect | | | | | |

### .03  FIELD CONTACTS

A.  An officer, in a place he has a lawful right to be, may field contact any person and interview him under circumstances where the officer feels the interview is necessary.  However, the officer may not arbitrarily stop any person he sees on the streets.

B.  An officer identifies himself as an officer when initiating a field contact, unless his identity is obvious.

C.  Persons who are field contacted and who are not suspects may not be detained against their will for the purpose of an interrogation.  They may be requested to identify themselves, however they are not compelled to do so.

D.  Persons field contacted are permitted to go on their way if they choose to do so.

E.  If, during a field contact, an officer develops reasonable suspicion to believe the person is involved in criminal activity, the person may be considered a suspect and detained.

### .04  STOPS FOR INTERROGATION

A.  An officer may stop a suspect for the purpose of conducting an interrogation.

B.  A suspect may be temporarily detained for the purpose of conducting an investigation and is not free to leave.  The person may be restrained from leaving, if necessary.  An officer may use the amount of force necessary, except deadly force, unless deadly force is offered, to detain and overcome resistance of a suspect who is detained against his will.

C.  In identifying a person as a suspect, the officer must be able to point to specific suspicious conduct or circumstances to justify the detention.  Examples of these elements which would assist an officer in justifying a stop and detention are:

1.  The person is making evasive or furtive movements;

2.  The person fits a wanted notice;

3.  The person is near the scene of a recently committed/reported crime;



**SAN ANTONIO POLICE DEPARTMENT**
GENERAL MANUAL
*Procedure 508 – Field Contacts*



4.   The person's demeanor or presence is unusual for the time or the place; and/or

5.   The officer has received information the person is involved in criminal activity.

D.   In evaluating the person's conduct or appearance, an officer can rely on his training and experience to determine whether or not the person is a suspect.

E.   An officer can base his suspicion that a person is a suspect on information received from a citizen informant, including an anonymous informant.

F.   An officer must be able to explain the reason why a person was detained and interrogated.  He does not need to point to any one thing which alone would justify his action but should refer to several things, each of which when taken alone may seem harmless, but when considered together by an officer who is trained or experienced in detecting criminal activity, raises a reasonable suspicion of a person's involvement in criminal activity.

G.   A suspect lawfully stopped for an interrogation may be detained for the length of time necessary to:

1.   Verify his identification;

2.   Account for his conduct;

3.   Account for his presence; and

4.   Ascertain whether a crime has been committed.

H.   A suspect who is detained against his will is informed by the officer he is not under arrest, but is being temporarily detained to determine if he is involved in any criminal activity.

I.   A suspect who is not under arrest and who is detained against his will is released:

1.   As soon as he provides a satisfactory explanation of his presence and his actions; or

2.   After thirty (30) minutes, if the officer has been unable to develop probable cause for an arrest.

**.05  FRISKS**

A.   An officer may frisk a person whom he has stopped or field contacted at any time during the encounter if he has reasonable suspicion to fear for his safety.  The frisk must be justified independent of the field contact or stop.

B.   The only purpose of a frisk is to find weapons which might put the officer or other bystanders in danger.

C.   Officers consider the following factors in developing reasonable suspicion for a frisk:

1.   The person makes furtive or evasive moves;

2.   A companion is found to be armed;

3.   The person is a suspect in an offense which involved the use of a weapon;

4.   There are bulges in the person's clothing or efforts by the person to conceal an object;

5.   Knowledge by the officer the person has been reported to customarily or occasionally carry weapons;

6.   The person's clothing is peculiar (i.e., wearing a coat during the summer); or



# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
*Procedure 508 – Field Contacts*



    7.   Upon receiving information from an informant the person is armed.

D.  A police officer must be able to explain why a person was frisked.  The officer need not point to any one thing which would justify the frisk, but should refer to several things, each of which, when taken alone may seem harmless, but when considered together by an officer who is trained or experienced in dealing with criminal suspects, raises a reasonable suspicion the person poses a threat to the officer's safety.

## .06 SCOPE OF FRISKS

A.  A frisk is limited to the search of a person's access areas.

B.  In situations where the person is a female, a female officer should conduct the frisk of the person. In cases where a male officer has reasonable suspicion to believe a weapon is secreted in a particular place on a female and a female officer is not present, the male officer may reach directly into that area to seize the weapon.

C.  An officer may frisk a person's vehicle if the person is in the vehicle or near enough to the vehicle to reach in it at the time of the stop or field contact and the officer has reasonable suspicion to believe the vehicle contains a weapon.

## .07 RESULTS OF FRISKS

A.  When an officer, during the course of a frisk, feels an object or item he reasonably suspects is a weapon, the officer removes the object or item for closer examination.   An officer may reach into or under clothing to seize the suspected weapon.

B.  If the object or item removed is a weapon, and the person is not exempt from the Texas Penal Code provisions prohibiting the carrying or possession of the weapon, the officer arrests the person.  The weapon is listed as evidence and a search of the person is conducted incidental to the arrest.

C.  If the object or item removed reasonably appears to be or contains contraband or evidence, the officer arrests the person.  The item or object is listed as evidence and the officer conducts a search of the person incidental to the arrest.

D.  An officer, while conducting a frisk for weapons, who feels an item immediately recognized to be contraband or evidence, may seize that item.  For the Plain Feel Doctrine to apply, officers are not allowed to manipulate the item for identification as contraband or evidence.

## .08 REPORTS

A.  An officer documents all field contacts using SAPD Form #2-3 in the following situations:

    1.   When the officer stops and interrogates a suspect who was not arrested and the details of the stop and interrogation are not included in an offense or incident report; or

    2.   When the officer conducts a frisk of a person who was not arrested and the details of the frisk are not included in an offense or incident report.